## BENSON v. HENKEL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF NEW YORK.

No. 308. Argued February 20, 21, 1905.—Decided April 17, 1905.

In proceedings before an extradition Commissioner, if the indictment produced as evidence of probable cause in proceedings for removal is framed in the language of the statute, with ordinary averments of time and place, and sets out the substance of the offense in language sufficient to apprise the accused of the nature of the charge against him, it is sufficient to justify removal, even though it may be open to motion to quash, or in arrest of judgment in the court in which it was originally found.

Whether § 5451, Rev. Stat., punishing bribery of officers of the United States, applies to bribery for acts to be committed in the future, in case a certain contingency which may never occur does occur, is a matter for the trial court to determine and not for the extradition-Commissioner.

The District of Columbia is a District of the United States to which a person, under indictment for a crime or offense against the United States, may be removed for trial within the meaning, and under the provision, of § 1014, Rev. Stat.

Where an offense is begun by the mailing of a letter in one district and completed by the receipt of a letter in another district, the offender may be punished in the latter district even though he could also be punished in the other. *Re Palliser*, 136 U. S. 257.

THIS was an appeal from an order dismissing a writ of *habeas corpus*, and remanding appellant to the custody of the marshal to await the action of the District Judge.

On December 31, 1903, an indictment was found by the grand jury of the District of Columbia, charging appellant with a violation of Rev. Stat. sec. 5451, in bribing an officer of the United States to do an act in violation of his official duty. Appellant was arrested in the Southern District of New York, upon a warrant issued by a United States Commissioner, which warrant was issued upon the complaint of a special agent of the Interior Department, to which a copy of the indictment was annexed. Appellant demanded an examination before the Commissioner, in the course of which witnesses were examined on behalf of the Government, and a certified copy of the indictment was admitted as evidence. No material testimony was offered on behalf of the defendant. The Commissioner found there was probable cause, and remanded defendant to the custody of the marshal to await a warrant for his removal. Immediately thereafter appellant applied for a writ of *habeas corpus* and *certiorari*. At the close of the hearing he was remanded to the custody of the marshal. 130 Fed. Rep. 486.

*Mr. J. C. Campbell* and *Mr. Frank H. Platt* for appellant:

The appellant is deprived of his liberty without due process of law. The Commissioner was without jurisdiction to order his arrest or commitment. The process under color of which appellant is restrained of his liberty is illegal, unauthorized and void.

The sufficiency of the charge of a crime is jurisdictional. It has always been held that the writ of *habeas corpus* is a proper instrument to secure the release of a prisoner held under order or sentence of a tribunal which acted without jurisdiction, and whose process was consequently void. *In re Nielson*, 131 U. S. 176; *In re Coy*, 127 U. S. 731; *In re Snow*, 120 U. S. 274; *In re Sawyer*, 124 U. S. 200; *Ex parte Bain*, 121 U. S. 1;

*In re Ayers,* 123 U. S. 443; *Ex parte Siebold,* 100 U. S. 371; *Ohio* v. *Thomas,* 173 U. S. 276.

It has been the practice in all Federal jurisdictions, in removal proceedings, to determine whether the indictment sufficiently charges a crime and to discharge the prisoner if it does not. *Stewart* v. *United States,* 119 Fed. Rep. 89; *In re Buell,* 3 Dillon, 116; *In re Terrell,* 51 Fed. Rep. 213; *In re Corning,* 51 Fed. Rep. 205; *In re Dana,* 68 Fed. Rep. 886; *United States* v. *Lee,* 84 Fed. Rep. 626; *In re Greene,* 52 Fed. Rep. 104; *In re Belknap,* 96 Fed. Rep. 614; *In re Huntington,* 68 Fed. Rep. 881; *In re Conners,* 111 Fed. Rep. 734; *In re Doig,* 4 Fed. Rep. 193.

In *In re Palliser,* 136 U. S. 257, this court, in a removal proceeding similar to that at bar, examined the indictment to ascertain whether it charged a crime.

It appears affirmatively, both in the indictment and in the testimony of the Government's witnesses, that at the time of the payments to Harlan and Valk, the special agents' report had not come within the possession, knowledge or reach of either of them, and there is no allegation or proof that it ever would. They had no duty concerning it, and it was not shown that they ever would have any such duty. The crime of bribery cannot be predicated upon a payment to an officer to induce him to perform an act, as to which he has no duty, and may never have any duty. *In re Yee Gee,* 83 Fed. Rep. 145; *State* v. *Butler,* 178 Missouri, 272; *State* v. *Joaquin,* 62 Maine, 218; *State* v. *Howard,* 137 Missouri, 289; *Newman* v. *State,* 97 Georgia, 367; *Moore* v. *State,* 69 S. W. Rep. 521; *Ex parte Richards,* 72 S. W. Rep. 838; *Messner* v. *State,* 40 S. W. Rep. 438; *Barefeld* v. *State,* 14 Alabama, 603.

Neither Harlan nor Valk was forbidden by any lawful duty to reveal to Benson the contents of the report, even if they ever should come into a position to do so.

The indictment contains no allegation of fact showing that it would be a violation of duty for Harlan or Valk to reveal the contents of the report. *Beaver's Case,* 194 U. S. 73, 85.

An allegation that a duty exists or that a certain thing is a person's duty is a conclusion of law. It is for the court to determine upon a disclosure of the facts whether or not a duty exists. *Butler* v. *State*, 17 Indiana, 450; *Buffalo* v. *Holloway*, 7 N. Y. 498; *Atwood* v. *Welton*, 57 Connecticut, 515; *Cane* v. *Chapman*, 5 Ad. & El. 647; *Bailey* v. *Bussing*, 29 Connecticut, 1; *Nickerson* v. *Hydraulic Co.*, 46 Connecticut, 27; *Hayden* v. *Smithville Mfg. Co.*, 29 Connecticut, 548; *Hewison* v. *New Haven*, 34 Connecticut, 138; 12 Ency. of Pleading & Practice, 1040.

An allegation of a conclusion of law in an indictment, without a statement of the facts from which such conclusion may be drawn, is insufficient. *United States* v. *Hess*, 124 U. S. 483. Facts are to be stated, not conclusions of law alone. *United States* v. *Kelsey*, 42 Fed. Rep. 882, 889; *United States* v. *Kessel*, 62 Fed. Rep. 59; *United States* v. *Post*, 113 Fed. Rep. 852; *Rieger* v. *United States*, 107 Fed. Rep. 916, 934; *People* v. *Cooper*, 3 N. Y. Crim. Reps. 117; *W. St. L. & P. R. R. Co.* v. *People*, 12 Ill. App. 448; *State* v. *Paul*, 69 Maine, 215.

For indictments held insufficient even where following language of the statute, see *United States* v. *Carll*, 105 U. S. 611; *United States* v. *Britton*, 107 U. S. 655, 669; *Keck* v. *United States*, 172 U. S. 434; *Batchelor* v. *United States*, 156 U. S. 426; *United States* v. *Hess*, 124 U. S. 483; *Evans* v. *United States*, 153 U. S. 584; *United States* v. *Melfi*, 118 Fed. Rep. 899; *United States* v. *Wardwell*, 49 Fed. Rep. 914.

The phrase "lawful duty" is equivalent to the expressions "legal duty" or "duty prescribed by law." The prohibition is limited and restricted to those duties which are prescribed by law. The words "legal" and "lawful" are synonyms. Standard Dictionary, Webster's Dictionary, Century Dictionary. A legal duty is defined to be that which the law requires to be done or forborne. Wharton on Negligence, § 24. The law takes no cognizance of a breach of a duty except it be a legal one, which the law imposes, *Pennsylvania Co.* v. *Frana*, 13 Ill. App. 98. For instances where of-

fense was held not to be bribery under § 5451, see *Unitec States* v. *Boyer*, 85 Fed. Rep. 425; *United States* v. *Gibson*, 47 Fed. Rep. 833; *Re Palliser*, 136 U. S. 257, 264.

No law is alleged or exists prescribing that it shall be the duty of clerks in the General Land Office to maintain secrecy in reference to reports of special agents.

There is no allegation of any rule, regulation or order prescribing that it shall be the duty of clerks in the Land Office to maintain secrecy in reference to reports of special agents, or making such reports secret and confidential, and the Government's evidence shows that no such rule, regulation or order existed.

If it can be presumed in the absence of definite allegations to that effect, and in the face of the evidence to the contrary, that some rule or regulation had been prescribed and promulgated by the Secretary of the Interior or the Commissioner of the General Land Office, prohibiting the publication of the contents of special agents' reports, nevertheless, such a rule, regulation or order, even if formally promulgated, could not in any event lay the basis for a criminal prosecution.

Congress may delegate power to Department officers to make regulations, which, if made pursuant to that authority and in supplement of the act of Congress, will have the force of law. *In re Kollock*, 165 U. S. 526. But Congress cannot delegate the power to designate or prescribe what acts or omissions shall constitute crimes. *United States* v. *Eaton*, 144 U. S. 677. Departmental regulations are not laws. *Morrill* v. *Jones*, 106 U. S. 466; 4 Am. & Eng. Ency. Law, 642; *United States* v. *Mard*, 116 Fed. Rep. 650; *United States* v. *Manion*, 44 Fed. Rep. 800.

Section 1014 Rev. Stat. does not authorize a removal to the District of Columbia. The District of Columbia is not a district and the Supreme Court of the District of Columbia is not a court of the United States, within the meaning of that section. Appellant being committed for removal to the District

of Columbia, is, therefore, deprived of his liberty without due process of law.

The District of Columbia did not exist at the time of the enactment of section 33 of the judiciary act and was not, therefore, within its contemplation. It has never been constituted or included within one of the Federal judicial districts and is not, therefore, within the provisions of the present section.

By act of February 21, 1871, 16 Stat. 426, the District of Columbia was created a body corporate for municipal purposes. By the act of June 11, 1878, 20 Stat. 102, it was provided that the District of Columbia shall remain and continue a municipal corporation. See also *District of Columbia* v. *Woodbury*, 136 U. S. 450; *Metropolitan Railroad Co.* v. *District of Columbia*, 132 U. S. 1. See Sen. Rep. No. 658, 43d Cong. 2d Sess.; *In re Dana*, 68 Fed. Rep. 886, 898, and cases cited; *United States* v. *Burr*, Fed. Cas. No. 14,674a; *United States* v. *Guiteau*, 1 Mackey, 563.

The Supreme Court of the District of Columbia is not a court of the United States within the meaning of § 1014, Rev. Stat. (or its predecessor, section 33 of the judiciary act). *McAllister* v. *United States*, 141 U. S. 174; *Wingard* v. *United States*, 141 U. S. 201; *The Coquitlam*, 163 U. S. 346; *Thiede* v. *Utah*, 159 U. S. 510; *United States* v. *McMillan*, 165 U. S. 510; *Corbus* v. *Leonhardt*, 114 Fed. Rep. 12; *Jackson* v. *United States*, 102 Fed. Rep. 473, 479. See, however, *Moss* v. *United States*, 23 App. D. C. 475, and cases cited.

The appellant is in any event entitled under the provisions of the Sixth Amendment to the Constitution to a trial in the State of California.

If there was any crime committed it was in California and not the District of Columbia, as according to the indictment the letter containing the money alleged to have been sent as a bribe was mailed in California and the crime, if any, was then complete. *United States* v. *Worrall*, 2 Dall. 384; *United States* v. *Plympton*, 4 Cr. C. C. 309; *United States* v. *Wright*,

2 Cr. C. C. 296; *United States* v. *Bickford*, 4 Blatchf. 337; *United States* v. *Fowkes*, 53 Fed. Rep. 13; *Landa* v. *State*, 26 Tex. Cr. App. 580; *Commonwealth* v. *Dorrance*, 14 Philadelphia, 671; *Re Palliser*, 136 U. S. 257. Section 731, Rev. Stat., is not applicable when applied to the District of Columbia. *United States* v. *Guiteau*, 1 Mackey, 564; *Burton* v. *United States*, 196 U. S. 283, is not in point.

*The Solicitor General* and *Mr. Francis J. Heney*, Special Assistant to the Attorney General, with whom *Mr. Arthur B. Pugh*, Special Assistant United States Attorney, was on the brief, for the United States:

Sufficiency of an indictment and all technical objections are to be determined by the court in which the indictment was found, and are not matters of inquiry in removal proceedings. *Habeas corpus* cannot be used as a writ of error to review judicial action under section 1014, either as to evidence of probable cause or relative to sufficiency of indictment. *Greene* v. *Henkel*, 183 U. S. 249; *Beavers* v. *Henkel*, 194 U. S. 73; *Horner* v. *United States*, 143 U. S. 570; *Ex parte Rickelt*, 61 Fed. Rep. 203.

Section 5451 does not contemplate the violation only of duties specifically required by law. The head of a Department is not compelled to show a statutory provision for everything he does or prescribes. Duties additional to those imposed by law or published regulations may be prescribed from time to time in the ordinary course of administration. *United States* v. *Macdaniel*, 7 Pet. 1; *Tyner* v. *United States*, 32 Wash. Law Rep. 258.

The statute punishes bribery of an officer or employé of the United States "to *induce* him to do or omit to do any act in violation of his *lawful* duty." Such duty includes every act natural and proper to the particular function or which may be directed by a superior officer; and, *per contra*, refraining from inconsistent and forbidden acts is included. It is not necessary that the violation of duty should itself be a

substantive offense, nor that the duty be actually violated. The bribery denounced is accomplished without those elements.

The District of Columbia is the proper trial district and the Supreme Court of that District is "a court of the United States" and has cognizance of the offense under sec. 1014. Some payments were made in Washington and cash was sent by mail from San Francisco and received by the addressee at Washington. Section 731, Rev. Stat.; *In re Palliser*, 136 U. S. 257; §§ 1, 61, 83, New Code D. C.; *Embry* v. *Palmer*, 107 U. S. 3; *Phillips* v. *Negley*, 117 U. S. 665; *Moss* v. *United States*, 32 Wash. Law Rep. 342; § 1, ch. 39, p. 337, and § 24, ch. 35, p. 296, Comp. Stat., D. C., 1894; act of June 22, 1874, 18 Stat. 193; *United States* v. *Haskins*, 3 Sawy. 262.

*In re Dana*, 68 Fed. Rep. 886, does not support the contrary view. The real ground for refusing removal there was that libel was a local and not a Federal offense and therefore did not fall within § 1014.

Absurd and mischievous results must be avoided. The appellant's contention would make the entire United States outside the District of Columbia a refuge for fugitives from the administration of justice there. If there were no other reason for rejecting his contention, that would be sufficient.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

But three questions are raised by the arguments and briefs of counsel in this case:

1. That the indictment charges no crime against the United States.

2. That the District of Columbia is not a District of the United States within the meaning of Rev. Stat. sec. 1014, authorizing the removal of accused persons from one District to another.

3. That the crime was committed in California, and is only triable there.

The indictment is founded upon Rev. Stat. sec. 5451, which enacts that "Every person who promises, offers, or gives . . . any money or other thing of value . . . to any officer of the United States, or to any person acting for or on behalf of the United States in any official function, under or by authority of any Department or office of the Government thereof, . . . . with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, . . . or with intent . . . to induce him to do or omit to do any act in violation of his lawful duty, shall be punished as prescribed," etc.

The first three counts of the indictment charge, in substance, that the defendant was engaged with one Hyde, at San Francisco, California, in the business of unlawfully obtaining the public lands of the United States; that an investigation by special agents of the Land Department of the unlawful transactions so charged was ordered by the Secretary of the Interior; and it became the duty of such agents to make reports to the Secretary, the contents of which should not be revealed to any unofficial person; that at this time a Department clerk was acting as chief of the special service division of the General Land Office, whose duty it was to act upon all reports of such special agents and to preserve and keep for the exclusive use of the Land Department all such reports; and that pending such investigation the defendant unlawfully gave to such officer, in the District of Columbia, certain sums of money, with the intent to induce him to do an act in violation of his lawful duty—that is to say, to reveal to defendant the contents of the reports of such special agents relating to said investigation. These counts are representative of all the others, one of which is based upon the payment of money to another officer of the United States, with like intent.

(1) Objection is made to the indictment upon the ground that at the time of payments to these officers the special agents' report had not come into their possession or knowl-

edge, and there is no allegation to prove that it ever would; that they had no duty concerning it; that it was not shown that they ever would have such duty; and that a charge of bribery cannot be based upon payment to an officer to induce him to perform an act, as to which he has no duty, and may never have any duty. (2) That neither of these officers was forbidden by any lawful duty to reveal to Benson the contents of any report, even if they ever should come into a position to do so. Upon these grounds it is insisted that the indictment charges no offense against the United States under section 5451.

1. The extent to which a Commissioner in extradition may inquire into the validity of an indictment put in evidence before him, as proof of probable cause of guilt, has never been definitely settled, although we have had frequent occasion to hold generally that technical objections should not be considered, and that the legal sufficiency of the indictment is only to be determined by the court in which it is found. *Ex parte Reggel*, 114 U. S. 642, 650; *Roberts* v. *Reilly*, 116 U. S. 80, 96; *Horner* v. *United States, No. 2*, 143 U. S. 570, 577; *Greene* v. *Henkel*, 183 U. S. 249, 260: *Beavers* v. *Henkel*, 194 U. S. 73, 87.

Indeed, it is scarcely seemly for a committing magistrate to examine closely into the validity of an indictment found in a Federal Court of another District, and subject to be passed upon by such court on demurrer or otherwise. Of course, this rule has its limitations. If the indictment were a mere information, or obviously, upon inspection, set forth no crime against the United States, or a wholly different crime from that alleged as the basis for proceedings, or if such crime be charged to have been committed in another District from that to which the extradition is sought, the Commissioner could not properly consider it as ground for removal. In such cases resort must be had to other evidence of probable cause.

While the principle laid down in some of the earlier cases in this court, that an indictment upon a statute is ordinarily sufficient if framed in the language of the statutes has been somewhat qualified in later cases, the rule still holds good that

where the statute contains every element of the offense, and an indictment is offered in evidence before the extradition Commissioner as proof of probable cause, it is sufficient if framed in the language of the statute with the ordinary averments of time and place, and with such a description of the fraud, if that be the basis of the indictment, as will apprise an intelligent man of the nature of the accusation, notwithstanding that such indictment may be open to motion to quash or motion in arrest of judgment in the court in which it was originally found. An extradition Commissioner is not presumed to be acquainted with the niceties of criminal pleading. His functions are practically the same as those of an examining magistrate in an ordinary criminal case, and if the complaint upon which he acts or the indictment offered in support thereof contains the necessary elements of the offense, it is sufficient, although a more critical examination may show that the statute does not completely cover the case. *Pearce v. Texas,* 155 U. S. 311; *Davis's Case,* 122 Massachusetts, 324; *State v. O'Connor,* 38 Minnesota, 243; *In re Voorhees,* 32 N. J. Law, 141; *In re Greenough,* 31 Vermont, 279, 288.

Applying these considerations to the present case, it appears plainly from the indictment that the accused was charged with the crime of bribery in paying to two officers certain sums of money to reveal to the petitioner the contents of certain reports, pertaining to an investigation then pending with respect to certain frauds used in obtaining public lands. The Commissioner was not required to determine for himself whether the statute applied to reports which had not yet been filed, and which might never be filed, or whether the words of the statute, "which may at any time be pending, or which may by law be brought before him in his official capacity," apply to the pendency of the investigation, or to the pendency of an obligation not to reveal the contents of a paper then in his possession. This was peculiarly a subject for examination by the court in which the indictment was found.

Like comment may be made with respect to the second

objection, that neither of these clerks was forbidden by any lawful authority to reveal the contents of such reports, upon the ground that there was no statute imposing such obligation. But it is clearly for the court to say whether every duty to be performed by an official must be designated by statute, or whether it may not be within the power of the head of a Department to prescribe regulations for the conduct of the business of his office and the custody of its papers, a breach of which may be treated as an act in violation of the lawful duty of an official or clerk. *United States* v. *Macdaniel*, 7 Pet. 1, 14.

While we have no desire to minimize what we have already said with regard to the indictment setting out the substance of the offense in language sufficient to apprise the accused of the nature of the charge against him, still it must be borne in mind that the indictment is merely offered as proof of the charge originally contained in the complaint, and not as a complaint in itself or foundation of the charge, which may be supported by oral testimony as well as by the indictment. When the accused is arraigned in the trial court he may take advantage of every insufficiency in the indictment, since it is there the very foundation of the charge, but to hold it to be the duty of the Commissioner to determine the validity of every indictment as a pleading, when offered only as evidence, is to put in his hands a dangerous power, which might be subject to serious abuse. If, for instance, he were moved by personal considerations, popular clamor or insufficient knowledge of the law to discharge the accused by reason of the insufficiency of the indictment, it might turn out that the indictment was perfectly valid and that the accused should have been held. But the evil once done is, or may be, irremediable, and the Commissioner, in setting himself up as a court of last resort to determine the validity of the indictment, is liable to do a gross injustice.

2. It is further urged in support of this appeal that Rev. Stat. sec. 1014 does not authorize a removal to the District of Columbia, as it is not a District of the United States within

the meaning of the law; and the Supreme Court of the District is not a court of the United States, as the words are used in that section.. The pertinent words in the section are that "For any crime or offense *against the United States*, the offender may," by certain officers therein designated, "be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. . ... . And where any offender or witness is committed in any District other than that where the offense is to be tried, it shall be the duty . . . of the marshal to execute a warrant for his removal to the District where the trial is to be had." It is true that this section was taken from the judiciary act of 1789, and at that time the District of Columbia was not in existence. But the same remark may be made of the dozens of different Districts which have been formed since this act was passed. The fact that the District of Columbia was not created out of territory theretofore unorganized, but was simply carved out of the District of Maryland, is of no more importance than would be the creation of a new District, rendered necessary by an increase of population or business, of which almost every Congress produces an example. Even if this were not so, the reënactment of this section of the judiciary act in 1873 as sec. 1014 of the Revised Statutes, clearly extended the word "District" to be District of Columbia, as well as to all other Districts created since the judiciary act. *United States* v. *Bowen*, 100 U. S. 508; *Arthur* v. *Dodge*, 101 U. S. 34; *Cambria Iron Co.* v. *Ashburn*, 118 U. S. 54, 57.

The anomaly in Rev. Stat. sec. 1014, as applied to this District, consists in its limitations to offenses "against the United States," since the courts of the District of Columbia have a local as well as a Federal jurisdiction, and may punish for offenses, which, if committed within the limits of any other District of the United States, would be relegated to the state courts. Offenders against state laws escaping from the State where the crime is committed and found in another State are surrendered upon the demand of the Governor, by proceedings

taken under a different statute. Rev. Stat. §§ 5278, 5279. Certain cases are to be found, which hold that persons accused of crimes committed within the District of Columbia, against its local laws, cannot be removed to this District for trial under section 1014. If this objection might have been a sound one under sec. 33 of the judiciary act, since the Revised Statutes local offenses have also been treated as offenses against the United States. The question, however, does not arise in this case, since the indictment charges an offense against the United States in violation of section 5451, respecting the bribery of public officers.

It is unnecessary to decide whether the power to remove offenders found in other Districts to this District is affected by the act of February 21, 1871, 16 Stat. 419, 426, providing that "the Constitution and all laws of the United States, which are not locally inapplicable, shall have the same force and effect within the said District of Columbia as elsewhere within the United States," since by section 2 of the act of June 22, 1874, 18 Stat. 193, the provisions of the thirty-third section of the judiciary act of 1789, from which Rev. Stat. sec. 1014 is taken, "shall apply to courts created by act of Congress in the District of Columbia." Criticism is made of this act in that it only authorizes a removal *from* the District of Columbia to other Districts, but that it does not authorize the removal of persons arrested in some other judicial District *to* the District of Columbia. But we think that if there were any doubt upon the subject still remaining it was removed by the new code of the District of Columbia, taking effect January 1, 1902, wherein it is declared by section 61 that the Supreme Court of the District "shall possess the same powers and exercise the same jurisdiction as the Circuit and District Courts of the United States, and shall be deemed a court of the United States;" and by section one (1) of the same code that "all general acts of Congress not locally inapplicable in the District of Columbia, and all acts of Congress by their terms applicable to the District of Columbia and to other places under the

jurisdiction of the United States, in force at the date of the passage of this act, shall remain in force, except in so far as the same are inconsistent with, or are replaced by, some provision of this code."

In conclusion of this branch of the case it may be said that any construction of the law which would preclude the extradition to the District of Columbia of offenders who are arrested elsewhere would be attended by such abhorrent consequences that nothing but the clearest language would authorize such construction. It certainly could never have been intended that persons guilty of offenses against the laws of the United States should escape punishment simply by crossing the Potomac River, nor upon the other hand that this District should become an Alsatia for the refuge of criminals from every part of the country.

3. Appellant makes further objection to a removal to the District of Columbia upon the ground that the offense, if any, was committed in California, and that under the Constitution he is entitled to a trial in that jurisdiction.

The objection does not appear upon the face of the indictment, which charges the offense to have been committed within this District, but from the testimony of one of those clerks it seems that the money was received by him in certain letters mailed to him from San Francisco and received in Washington. Without intimating whether the question of jurisdiction can be raised in this way, the case clearly falls within that of *In re Palliser*, 136 U. S. 257, in which it was held that where an offense is begun by the mailing of a letter in one District and completed by the receipt of a letter in another District, the offender may be punished in the latter District, although it may be that he could also be punished in the former. A large number of authorities are collated by Mr. Justice Gray in the opinion, and the case is treated as covered by sec. 731, providing that when an offense is begun in one District and completed in another it shall be deemed to have been committed in either, and be tried in either, as though it had been

wholly committed therein. In addition to this, however, it is conceded that some of the offenses charged in the various counts were committed in Washington.

There was no error in the action of the court below, and its judgment is

*Affirmed.*

MR. JUSTICE DAY, with whom were MR. JUSTICE WHITE, MR. JUSTICE PECKHAM and MR. JUSTICE McKENNA, concurring.

MR. JUSTICE WHITE, MR. JUSTICE PECKHAM, MR. JUSTICE McKENNA and the writer agree in the conclusion just announced and in the main with the reasoning of the opinion. But we are unable to concur in the view that where the Commissioner may be of opinion that the indictment charges no offense against the laws of the United States, and there is no other proof of probable cause before him, the order of arrest may be made, remitting to the court where the indictment was found all questions of the sufficiency of the indictment. We agree that upon the hearing before the Commissioner the indictment is *prima facie* to be taken as good, and that no technical objection should prevail against it; its ultimate sufficiency being matter for determination of the court wherein it was returned against the accused, subject to review in the appellate courts. *Greene* v. *Henkel*, 183 U. S. 249. But the order of removal involves judicial rather than mere ministerial action, and must be issued by the judge of the District when the case made warrants it. Sec. 1014, Rev. Stat.; *Beavers* v. *Henkel*, 194 U. S. 73, 83. And whether found in the indictment, or as the result of other testimony, the order to remove the accused can only be issued upon a showing of probable cause. *Greene* v. *Henkel*, 183 U. S. *supra*.

In this case the argument chiefly relied upon against the right to issue the order of arrest, and subsequently of removal, rested upon the alleged insufficiency of the indictment to charge any offense within the terms of the statute, because the

reports which it was alleged the accused had been bribed to reveal were not then on file and might never be filed in the Department. It is said that the Commissioner was not required to determine for himself whether the statute applied to such reports, but such objections must be remitted for determination to the court in which the indictment was found. In other words, the order of arrest and commitment may be made, although the Commissioner be of opinion that the indictment, in a particular vital to the prosecution of the offense, and which cannot be supplied by other proof, is fatally defective, and the accused is charged with no offense against the laws of the United States. In our opinion, the Commissioner, when the case is thus presented, must pass upon the sufficiency of the indictment. It is his duty to decide whether an offense is charged, with a view to making or withholding the order of arrest, which when made, becomes the basis of an order of removal of a citizen to the place of trial, which may be many miles distant from his home. Such order is proper only in cases wherein probable cause has been shown to believe the accused guilty of an offense cognizable by the laws of the United States in the proceeding pending against him, and for which he is to answer at the place of indictment.