UNITED STATES v. CAMPBELL. SAME v. STUMP. SAME v. TUR-
NER et al.

(District Court, E. D. Pennsylvania.   June 9, 1910.)

Nos. 36–38.

1. CRIMINAL LAW (§ 242*)—FEDERAL PRACTICE—REMOVAL OF ACCUSED.
    On motion to remove one to the jurisdiction where he has been in-
    dicted, the indictment is prima facie evidence that the offense was com-
    mitted there; but he may overcome the presumption by appropriate evi-
    dence, and show any other legal reason why removal should be denied.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 509, 510;
    Dec. Dig. § 242.*]

2. CRIMINAL LAW (§ 97*)—LOCALITY OF OFFENSE—CONSPIRACY—PARTICIPA-
    TION IN OVERT ACTS.
    Persons accused of conspiring to violate the "bucket shop" law (Act
    March 1, 1909, c. 233, 35 Stat. 670) in the District of Columbia may be
    tried there, if they participate in overt acts there, though the unlawful
    agreement was made elsewhere, since participation may be proved by
    evidence of their conduct elsewhere.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 177; Dec.
    Dig. § 97.*]

3. CRIMINAL LAW (§ 242*)—FEDERAL PRACTICE—REMOVAL OF ACCUSED.
    Probable cause for a finding that persons accused of conspiracy to
    violate the "bucket shop" law (Act March 1, 1909, c. 233, 35 Stat. 670) in
    the District of Columbia participated in the overt acts committed there
    warranted their removal.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 509, 510;
    Dec. Dig. § 242.*]

4. DISTRICT OF COLUMBIA (§ 3*)—CONGRESSIONAL POWER.
    Congress may enact laws applying exclusively to the District of Co-
    lumbia.
    [Ed. Note.—For other cases, see District of Columbia, Cent. Dig. § 3;
    Dec. Dig. § 3.*]

5. CRIMINAL LAW (§ 242*)—"OFFENSE AGAINST UNITED STATES."
    A conspiracy to violate the "bucket shop" law (Act March 1, 1909, c.
    233, 35 Stat. 670) of the District of Columbia is an offense against the
    United States, within Rev. St. § 1014 (U. S. Comp. St. 1901, p. 716), pro-
    viding for the removal of offenders against the United States, and sec-
    tion 5440 (page 3676), relating to conspiracies to commit offenses against
    the United States.
    [Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 242.*]

Thomas H. Campbell, Henry C. Stump, and George Turner and an-
other having been indicted in the District of Columbia for conspiring
to violate the so-called "bucket shop" law, the United States applies
for warrants of removal.   Motion granted.

J. Whitaker Thompson, U. S. Dist. Atty., and Jasper Yeates Brin-
ton, Asst. U. S. Dist. Atty.
Ruby R. Vale, for defendants.

J. B. McPHERSON, District Judge.   Three indictments have been
found in the District of Columbia charging certain persons with con-
spiring there to violate the so-called "bucket shop" law of the District.

passed in 1909 (Act March 1, 1909, c. 233, 35 Stat. 670). Several of these defendants have been arrested here and the government now applies for warrants of removal. The indictments are prima facie evidence that the offense was committed in that jurisdiction, but they are only prima facie; and it is beyond doubt that the defendants have a right to overcome the presumption by appropriate evidence, and to show any other legal reason why the removal should not be permitted. Such evidence was heard by the commissioner as the defendants desired to offer, and by agreement this evidence is to be considered by the court on the pending motion. The question for decision is whether upon the whole case the defendants can be lawfully removed to Washington for trial; or, to state the question more accurately, whether the commissioner had probable cause to hold that the offense was triable in the District of Columbia.

For present purposes it may be conceded that if the evidence clearly showed that the defendants now before the court did not conspire within the District of Columbia, and also that they did not take part in the overt acts that are charged to have been committed there, they cannot be tried in that jurisdiction. In that event the sixth amendment of the Constitution would be a bar to the removal. But if they did take part in these acts, it is lawful to try them in Washington, although the unlawful agreement may not have been entered into there; for participation may be proved by the evidence of their conduct elsewhere (In re Palliser, 136 U. S. 257, 10 Sup. Ct. 1034, 34 L. Ed. 514), if such conduct was intended to further, and did further, the doing of the overt acts in the District of Columbia. The physical absence of the defendants does not of itself prove that they did not conspire in the District; neither does it prove of itself that they did not take part in the overt acts that may have been committed there. It is merely evidence on these questions, and, while it is evidence in favor of the defendants, it is by no means conclusive. In spite of it, the result of all the testimony may justify the commissioner's finding. And this, I think, is what the evidence taken as a whole does show—that probable cause for the removal exists. The prima facie case made out by the indictments has not been overcome, so as to enable me to say with the required certainty that the defendants have committed no offense for which they can lawfully be put on trial in the District of Columbia. In an admirable and exhaustive argument, the defendants' counsel relies on two legal propositions to prevent the removal. One of them is that a conspirator can only be tried in one of two places— either where the unlawful agreement was in fact made, or in a jurisdiction where he himself took part in some overt act that was done in furtherance of such agreement. For the reason already stated, this proposition need not be controverted; but, assuming it to be sound, it is my opinion that probable cause has been shown for the commissioner's finding that the defendants did take part in the overt acts that were done in the city of Washington. This is sufficient to justify their removal to that jurisdiction for trial. Price v. Henkel (decided Feb. 21, 1910) 216 U. S. 488, 30 Sup. Ct. 257, 54 L. Ed. ——, and cases there cited.

The second proposition is that even actually to conspire in the Dis-

trict of Columbia to keep a bucket shop there is not an offense against the United States within the meaning of sections 1014 and 5440 of the Revised Statutes (U. S. Comp. St. 1901, pp. 716, 3676). The case chiefly relied upon to support this position is In re Dana (D. C.) 68 Fed. 886, decided in 1895 by Judge Brown in the Southern district of New York. It is a very careful and elaborate discussion of the subject; but it is at variance with later and more authoritative decisions of the federal courts, and therefore cannot be regarded as binding on the present motion. Benson v. Henkel, 198 U. S. 1, 25 Sup. Ct. 569, 49 L. Ed. 919; Price v. McCarty, 89 Fed. 84, 32 C. C. A. 162; United States v. Wimsatt (D. C.) 161 Fed. 586. No doubt Congress may pass laws applying exclusively to the District of Columbia, and the law in question may belong to this class. But if an offense against this statute is not an offense against the United States, how is it to be described? It is certainly not an offense against the District of Columbia, for the District is not a sovereignty, and has no legislative power of its own. Unless, therefore, it is an offense against the United States—the sovereignty which has exclusive jurisdiction of the subject and has passed the law forbidding the disputed acts—it is not an offense at all, but remains somehow in the air, removed from all danger of punishment. If the present contention is correct, it would follow that no criminal who had evaded arrest in the District could be arrested elsewhere and returned for trial; for neither the Constitution nor any federal statute (unless it be section 1014) provides for the return to the District of such offenders. In contemplating this contingency the Supreme Court used the following language in Benson v. Henkel, supra (page 15 of 198 U. S., page 572 of 25 Sup. Ct., 49 L. Ed. 919):

" * * * Any construction of the law which would preclude the extradition to the District of Columbia of offenders who are arrested elsewhere would be attended by such abhorrent consequences that nothing but the clearest language would authorize such construction. It certainly could never have been intended that persons guilty of offenses against the laws of the United States should escape punishment simply by crossing the Potomac river, nor, upon the other hand, that this District should become an Alsatia for the refuge of criminals from every part of the country."

The motion is granted.