Mr. Justice Robb
delivered the opinion of the Court:
The defendants, Louis Celia, Angelo Celia, Samuel Adler,, William Fox, Robert Hall, Samuel Raymond, Osear J. Rappel, E. M. Browning, Henry R. Duryee, and Charles R. Alley, appellees here, were indicted in the supreme court-of the District for conspiracy under sec. 5440, Rev. Stat. H. S. Comp. Stat. 1901, p. 3676, to commit an offense against the United States, to wit, the offense of being a keeper of a bucket shop-in this District, in violation of “An Act to Prohibit Bucketing and Bucket Shopping, and to Abolish Bucket Shops,” approved March 1st, 1909, 35 Stat. at L. 670, chap. 233. To this indictment the defendants severally demurred, and the court sustained the demurrers, quashed the indictment, and allowed the defendants to go without day. Thereupon the United States noted an appeal under sec. 935 of the Code [31 Stat. at L. 1341, chap. 854], and brought the case here.
1. We must first consider the motion which the defendants-have filed to dismiss this appeal, the ground of the motion being that this court is without jurisdiction in the premises. The motion is without merit. In United States v. Cadarr, 24 App. D. C. 143, this court examined said see. 935 of the Code, and sustained the right of the government to an appeal in an analogous case. There is nothing inconsistent with that ruling in United States v. Evans, 30 App. D. C. 58, affirmed in 213 U. S. 297, 53 L. ed. 803, 29 Sup. Ct. Rep. 507. In that case the defendant had been put in jeopardy and a verdict of acquittal returned. The court ruled that a moot question only was presented, and that sec. 935 of the Code did not authorize an appeal in such a case. It is apparent, therefore, that the force-of the decision in the Cadarr Case was in nowise impaired.
*426 2. The point is also made that the bucket-shop act, being applicable only to the District of Columbia, and prosecutions thereunder, defendants insist, being required to be in the name of the District, a violation of said act cannot be said to be an •offense against the United States within the purview of sec. 5440, Rev. Stat. This contention we are unable to sustain. While the District of Columbia, by act of Congress, has been created a municipal corporation having a right to sue and be •sued, it has no sovereign power. As was said in Metropolitan R. Co. v. District of Columbia, 132 U. S. 1, 33 L. ed. 231, 10 Sup. Ct. Rep. 19: “Its supreme legislative body is Congress. * * * Crimes committed in the District are not crimes •against the District, but against the United States.” See also Tyner v. United States, 23 App. D. C. 324; Geist v. United States, 26 App. D. C. 594; United States v. Campbell, 179 Fed. 762. We therefore rule that it is an offense against the United States to violate the provisions of the bucket-shop act, and hence that a conspiracy to commit such an offense is cognizable under the conspiracy statute of the United States.
3. The sufficiency of the indictment is challenged on the ground that it does not adequately inform the defendants of the charge against them. A brief analysis of the indictment will suffice to dispel any doubt as to its sufficiency. It charges that the defendants, naming them, on the 15th day of August, in the year 1909, and within the District of Columbia, “unlawfully did conspire, combine, confederate, and agree together, and with divers other persons to said grand jurors unknown, to commit an offense against the United States, to wit, the offense of being a keeper of a bucket shop in said District, that is to say, a room and place known as 1420 New York avenue, northwest, in said District, where certain contracts prohibited by the act of Congress approved March 1st, 1909, and entitled ‘An Act to Amend an Act Entitled “An Act to Establish a Code of Law for the District of Columbia,” relative to gambling, bucket shops, and bucketing,’ were to be made, to wit, contracts respecting the purchase and sale, upon margins, of divers securities, to wit, securities of the following *427 corporations, among others.” This is followed by a list of corporations. The indictment then contains an averment of the essential characteristics of the bucketing contracts intended to be made, from which averment it plainly appears that those contracts were the ones prohibited by the bucket-shop act, and that the keepers of a place where such contracts were to be made would be the keepers of a bucket shop within the meaning of the statute. This averment ends with the words, it then and there being the design and intention of said defendants to keep such bucket shop and conduct the business of the same through said Henry it. Duryee.” Then follows the overt acts, which it is conceded are sufficiently full and explicit.
It must be remembered that in a charge of conspiracy the conspiracy is the gist of the crime, and that, as stated by the Supreme Court of the United States in Williamson v. United States, 207 U. S. 425, 52 L. ed. 278, 28 Sup. Ct. Rep. 163, “certainty, to a common intent, sufficient to' identify the offense which the defendants conspired to commit, is all that is requisite in stating the object of the conspiracy.” Here the object of the conspiracy is clearly stated, the time when and the place where it was entered into. The manner in which it was to be carried out also sufficiently appears. It is true that the particular part to be assumed or undertaken by each conspirator in the consummation of the unlawful scheme is not set forth; but this is unnecessary. Such a requirement would impose too great a burden upon the government, and, in many instances, defeat the ends of justice. Each of these defendants is charged with having participated in the original conspiracy, and each, by his demurrer, admits this averment to be true. All,' therefore, are equally guilty in the eyes of the law, as none withdrew before the commission of the overt acts. United States v. Britton, 108 U. S. 199, 204, 27 L. ed. 698, 700, 2 Sup. Ct. Rep. 531; Hyde v. United States, 35 App. D. C. 451, 494. This indictment is in substantially the same form as that which was sustained in Dealey v. United States, 152 U. S. 539, 38 L. ed. 545, 14 Sup. Ct. Rep. 680, 9 Am. Crim. Rep. 161.
*428 4. We will now proceed to examine the so-called bucket-shop act. This act constitutes secs. 869a, b, c, and d, of subchapter 5, entitled “Offenses Against Public Policy,” of Chapter 19 of the Code, entitled “Crimes and Punishments.” The 1st -section reads in part as follows: “An Act to prohibit bucketing and bucket shopping, and to abolish bucket shops. The following words and phrases used in this act shall, unless a different meaning is plainly required by the context, have the following meanings: * * * ‘Contract’ shall mean any agreement, trade, or transaction. * * * ‘Bucket shop’ shall mean any room, office, store, building, or other place where any contract prohibited by this act is made or offered to be made. * * * ‘Bucketing’ or ‘bucket shopping’ shall mean: (a) The making of or offering to make any contract respecting the-purchase or sale, either upon credit or upon margin, of any securities or commodities wherein both parties thereto intend, or such keeper intends, that such contract shall be, or may be,, terminated, closed, or settled according to or upon the basis-of the public market quotations of prices made on any board of trade or exchange upon which said securities or commodities are dealt in, and without a bona fide purchase or sale of the-same; or (b) the making of or offering to make any contract respecting the purchase or sale, either upon credit or upon margin, of any securities or commodities, wherein both parties intend, or such keeper intends, that such contract shall be, or may be, deemed terminated, closed, or settled when such public market quotations of prices for the securities or commodities named in such contract shall reach a certain figure, without a bona fide purchase or sale of the same; or (c) the making of’ or offering to make any contract respecting the purchase or sale, either upon credit or upon margin, of any securities or commodities wherein both parties do not intend, or such keeper-does not intend, the actual or bona fide receipt or delivery of' such securities or commodities, but do intend, or such keeper-does intend, a settlement of such contract based upon the differences in such public market quotations of prices at which said securities or commodities are, or are asserted to be, bought *429 and sold.” The part of sec. 869b with which we are concerned reads as follows: “Any person who makes or offers to make •any contract defined in the preceding section, or who is the keeper of any bucket shop, shall, upon conviction thereof, be punished by a fine not exceeding one thousand dollars or by imprisonment for not more than one year. Any person who ■shall be convicted of a second offense shall be punished by imprisonment for not more than five years.”
The learned trial justice ruled that while the heading of the .act “undoubtedly indicates a purpose which Congress declares itself about to execute,” that purpose was not carried into effect; that only two classes of persons are penalized, those who make any contract defined in the 1st section and those who .are the keepers of any bucket shop; that the word “contract,” .as defined in the 1st section, means any agreement, trade, or transaction, and tha,t, inasmuch as the 2d section purports to penalize indiscriminately the making of contracts, the act is void. The court further held “that the phraseology of the section which penalizes ‘contracts’ permits them no constitutional ■operation: therefore, no contracts being prohibited by a valid legislative enactment, there can be no operation for that clause •of 869a which defines ‘bucket shop’ as - any ‘place where any •contract prohibited by this act is made;’ consequently it is no •offense to be the keeper of such place.”
Penal statutes, like all others, are the embodiment of legislative will in concrete form, and constitute a rule of conduct for the guidance and control of the individual. If the form employed be intelligible to the ordinary individual, the prime requisite of the statute is met; in other words, if the ordinary individual, after reading the statute, knows exactly what he may and may not do, its meaning cannot be said to be ambiguous. If such a statute be within the scope of legislative authority, it is the plain duty of the court to sustain and enforce it.
As previously stated, this act is found in the subchapter of the Code dealing with offenses against public policy, and the declared purpose and scope of the act is to prohibit bucketing and bucket shopping, that is, a specified kind of gambling con *430 tracts, and to abolish bucket shops, that is, places where such inhibited contracts are made or offered to be made. After this declaration as to the scope and purpose of the act, it is provided that certain words and phrases used therein “shall, unless a different meaning is plainly required by the context,” have certain meanings. The word “contract,” it is provided, shall include “any agreement, trade, or transaction.” Bucket shop, it is provided, shall cover any room, office, store, building, or other place, not where any contract is made or offered to be made, but “where any contract prohibited by this act is made or offered to be made.” “Keeper” is then ordained to mean or include “any person owning, keeping, managing, operating, or promoting a bucket shop” or assisting therein. In the next and last paragraph of the section, bucketing and bucket shopping, the particular species of gambling contracts which the act was designed to prohibit, are fully and clearly defined. The next section of the act, sec. 869b, ordains that any person who makes or offers to make “any contract defined in the preceding section, or who is the keeper of any bucket shop,” shall, upon conviction, be punished. In holding that the word “contract,” as thus used in sec. 869b, embraces all agreements, trades, or transactions, the learned trial justice has necessarily entirely disregarded the declared purpose and object of the act. It was not only necessary to do this in thus enlarging the operation of sec. 869b, but it was also necessary entirely to disregard almost all the provisions of the preceding section. In our view, such an interpretation of the act is violative of well-settled principles of statutory construction. In the first place, we are not at liberty to disregard the declared purpose of a criminal statute, nor are we at liberty to disregard any part of its connected structure. On the contrary, we must have in mind the legislative intent, the evils sought to be overcome, and, if possible, give force and effect to every part of the connected structure. United States v. Corbett, 215 U. S. 233, 59 L. ed. 173, 30 Sup. Ct. Rep. 81; District of Columbia v. Dewalt, 31 App. D. C. 331. And where genéral words are employed, their meaning should be restricted to the obvious scope of the statute. *431 United States v. Palmer, 3 Wheat. 610, 4 L. ed. 471; Church of the Holy Trinity v. United States, 143 U. S. 457, 36 L. ed. 226, 12 Sup. Ct. Rep. 571; United States v. Kirby, 7 Wall. 482, 19 L. ed. 278; Petri v. Commercial Nat. Bank, 142 U. S. 644, 35 L. ed. 1144, 12 Sup. Ct. Rep. 325.
Considering the act before us as a connected structure, it is apparent that the words “any contract defined in the preceding section,” as used in its 2d section, refer not to all contracts, but to the particular kind of contracts theretofore described, namely, bucketing and bucket-shopping contracts. Any other construction necessarily frustrates the obvious legislative intent, and is reached only by wresting one clause of the 1st section from its context. Regarding that section, as above suggested, as one harmonious whole, and giving to the words-therein employed the intent and meaning clearly in the mind of the legislature, we reach a reasonable and consistent result. It must be presumed that the framers of the act fully understood that they were without authority to prohibit the making of all contracts. Indeed, they have furnished us, in the very first words of the act, with indubitable evidence upon this point, for there they have declared its purpose, and its sole purpose. Evidently intending that the particular contracts at which the act was aimed, and which were thereafter to be fully defined or described, should include and embrace all “agreements, trades, or transactions” relating to the same subject-matter, Congress at the outset in effect declared that the word “contract,” as thereafter used, should be synonymous with “agreement, trade, or transaction.” The definition of a bucket shop clearly indicates that a particular kind of contract only -was in mind, for in this definition we find the words “any contract prohibited by this act.” When, therefore, Congress used the words in the 2d section, “any contract defined in the preceding section,” those words were intended to refer, and did in fact refer, to bucketing and bucket-shopping contracts, or to “agreements, trades, or transactions” relating thereto.
Had we been disposed to hold that the word “contract,” as used in the 2d section of the act, embraced any agreement, trade, *432 qr transaction, we would have been met by the provision in the first paragraph of the 1st section of the act, to the effect that the words and phrases thereafter used shall have certain meanings, “unless a different meaning is plainly required by the nontext.” This declaration on the part of Congress is a mere repetition of a well-recognized canon of interpretation. The words “defined in the preceding section,” as used in the 2d section of the act, refer to that entire section, and not merely to one of its clauses. That entire section was aimed at bucketing and bucket-shopping contracts, and the nature and essential characteristics of such contracts are therein set forth. Again, the 2d section of the act does not purport to penalize all contracts. It merely punishes the making of “any contract defined in the preceding section,” or, as we have endeavored to demonstrate, bucketing contracts.
But, it is said, even assuming that bucketing contracts only are penalized, the act is still unconstitutional. The contention is that the intention of the keeper determines the lawfulness of the contract, and that under the terms of the act an innocent party may be penalized. Without intimating any opinion ¿s to whether good faith on the part of a person dealing with the keeper of a bucket shop would, under the terms of the act, constitute a good defense to a charge against him for a violation of its provisions, we may quite easily dispose of this contention. The act is aimed primarily at bucket shops. It would hardly be denied that it was quite competent for Congress to have penalized merely the keeping of a bucket shop and the making of bucketing contracts by the keeper thereof. Indeed, in many of the states this has been done. It is therefore apparent that, had Congress not undertaken in any manner to punish the party dealing with the bucket shop keeper, it would nevertheless have enacted the other provisions of the law, for in so doing it would have abolished bucket shops and bucketing. The provisions of the act defining a bucket shop, and prohibiting the keeper thereof from making bucketing contracts, being entirely separable from and in nowise dependent upon the provisions relating to the other *433 parties to such contracts, we are not now concerned with those other provisions, since, as we have said, it is apparent that, regardless of those provisions, Congress would have enacted those which we have found to be free from defect. Hyde v. Southern R. Co. 31 App. D. C. 466; El Paso & N. E. R. Co. v. Gutierrez, 215 U. S. 87, 54 L. ed. 106, 30 Sup. Ct. Rep. 21.
The judgment must be reversed, and the cause remanded for further proceedings. Beversed and remanded.