## MARTIN *v.* SPLAIN.

## FOWLER *v.* SPLAIN.

## SCHULTEIS *v.* SPLAIN.

HABEAS CORPUS; CRIMINAL LAW; INDICTMENT, SUFFICIENCY OF.

Whether an indictment in a Federal court in New York charging the accused with a conspiracy to restrain and hinder foreign trade and commerce in munitions of war by instigating strikes and walkouts among workmen employed in manufactories, by bribery of labor organizations and otherwise, does or does not charge an offense against the United States, is a question for the court in which it was returned to determine, and such question will not be determined in habeas corpus proceedings instituted here by some of the accused, especially where it appears that in that court a motion to quash the indictment for insufficiency was overruled.

Nos. 3015, 3016 and 3017. Submitted January 2, 1917. Decided January 22, 1917.

HEARING on appeals by the petitioners from orders of the Supreme Court of the District of Columbia discharging writs of habeas corpus and remanding the petitioners to the custody of the United States marshal. *Affirmed.*

The COURT in the opinion stated the facts as follows:

These three cases are appeals from orders in the supreme court of the District of Columbia discharging writs of habeas corpus, and remanding the appellants, Henry B. Martin, H. Robert Fowler, and Herman J. Schulteis, to the custody of the marshal for removal to the southern district of New York.

The cases involved the same question. An indictment was presented in the United States district court for the southern district of New York against Franz Rintelen, alias Fred Hansen, alias Miller, alias Muller, alias Edward V. Casche, alias Edward V. Gates, David Lamar, alias Lanauer, alias David H. Lewis, Frank Buchanan, Jacob C. Taylor, H. Robert Fowler, Frank S. Monnett, Herman Schulteis, and Henry B. Martin. The indictment alleges by way of inducement that during the year 1915, and for some time prior thereto, a large number of individuals, copartnerships, and corporations, called manufacturers, were engaged in various States in the United States in the production and manufacture of munitions of war, and of military and naval stores, and of rifles, cannon, and other weapons of war, etc., shells, cartridges, projectiles, gunpowder and other explosives, and materials used in the manufacture of appliances used in connection therewith, locomotives, cars, automobiles, aeroplanes, and other vehicles of transportation, parts thereof, and appliances used in connection therewith, building and railroad materials, and other articles of many kinds, all of which were of a character adapted for use in war on land or at sea; and the said manufacturers so produced said articles for the sole purpose of immediate sale and shipment in trade and commerce with Great Britain, France, Russia, Italy, and other foreign nations; that the said manufacturers were engaged in the business of delivering and shipping said articles to persons, partnerships, corporations, and organized bodies of men from the State in which they were so produced or manufactured to and through the port of New York and other ports of the United States and thence to said foreign countries; and that divers persons, partnerships, etc., organized bodies of men other than said

manufacturers, were also engaged in so delivering, shipping, and transporting such articles from States of the United States to said foreign countries; that the said manufacturers and other persons, partnerships, corporations, and organized bodies of men so engaged in foreign trade and commerce, as aforesaid, employed large numbers of men both in the production and manufacture of said articles and in the selling, shipping, and transporting of them in the aforesaid foreign trade and commerce, and said articles were continuously moved in said foreign trade and commerce; and when it was necessary or convenient so to do in order to bring them to a suitable port for shipment, were continuously moved from one State of the United States to other States; that all of the names and localities of said manufacturers and said other parties so engaged in foreign trade and commerce, and the times, amounts, and routes of such shipments and transportations are not known to the grand jurors, and are so numerous as to preclude their enumeration in this indictment.

The indictment then proceeded to charge that the aforenamed persons, and divers other persons whose names to the grand jurors are unknown, each of whom well knew the facts as to said foreign commerce hereinbefore stated and alleged, at and within the said southern district of New York and within the jurisdiction of this Court, unlawfully did knowingly and wilfully engage in a conspiracy to restrain the aforesaid foreign trade and commerce and to restrain, hinder, and prevent the transportation of said articles in said foreign trade and commerce so far as, and at such times, places, and as to such of said articles and in such ways as they might thereafter be able so to do, and to restrain, prevent, and hinder the producing or manufacture of said articles for the sole purpose of restraining, preventing, and hindering the shipment and transportation in foreign trade and commerce of such of said articles and in such ways and at such times and places as they might be able so to do; that the purpose and object of such conspiracy was not confined to any particular articles, times, places, ways, and means, but said defendants conspired and intended, at any time or

place, and by any ways or means, some of which were not defi-
nitely determined upon by said defendants, to restrain, prevent,
and hinder such shipments in foreign trade and commerce; and
the particular articles, times, places, ways, and means deter-
mined upon by said defendants are not known to the grand
jurors; that among the divers means and methods by which the
objects of said conspiracy were intended by the. defendants to
be accomplished were the following.    Then follow specifica-
tions:

1. Instigating and causing strikes and walkouts among the
workmen employed at the plants and factories of the manufac-
turers so as to prevent and hinder the manufacture and thereby
to restrain the shipping and transportation of said articles in
foreign trade and commerce.

2. Instigating and causing strikes and walkouts among work-
men and employees of said persons, partnerships, corporations,
and organized bodies of men other than said manufacturers en-
gaged in foreign trade and commerce aforesaid, employed in
the shipping and transporting of said articles so as to restrain
the said shipping and transporting thereof in said foreign trade
and commerce.

3. Inducing by solicitation, persuasion, and exhortation, and
by the preparation, sending, mailing, and distributing of circu-
lars, pamphlets, letters, telegrams, etc., the aforesaid workmen
to quit the employment of the manufacturers, and thereby to
restrain, hinder, and prevent in whole or in part the operation
of said plants and transportation of said articles in foreign trade
and commerce.

4. Inducing by solicitation, persuasion, and exhortation, and
by preparation, sending, mailing, and distribution of circulars,
pamphlets, letters, telegrams, newspaper articles, etc., the afore-
said workmen to leave the employ of the aforesaid persons, part-
nerships, corporations, and organized bodies of men other than
said manufacturers, engaged in said foreign trade and commerce
as aforesaid, for the purpose of restraining, hindering, and pre-
venting in whole or in part the shipping and transporting of
said articles in the aforesaid foreign trade and commerce.

5. Bribing and distributing money among divers officers and persons in control of various labor organizations to induce the said officers and persons in control and charge of said organizations to cause the members of said organizations who were or might be employed by the said manufacturers or by the said other persons, partnerships, corporations, and organized bodies of men engaged in foreign trade and commerce as aforesaid to leave their employment and to bring about strikes and walkouts among the said members of the said labor organizations, and thereby to restrain, prevent, and hinder in whole or in part the producing and manufacture and the expected shipment and transportation in said foreign trade and commerce of said articles.

6. By divers other means and methods not specifically determined upon by said defendants, but to be decided upon by them as occasion might arise, all calculated in furtherance of and to effectuate the object of said conspiracy.

The three appellants, Martin, Fowler, and Schulteis, were arrested in the District of Columbia and brought before the United States Commissioner. The parties admitted their identity, a duly certified copy of the indictment, warrant, and other proceedings were offered by the Government, and the Commissioner issued a mittimus to the marshal to commit the said parties to the jail of the District of Columbia.

The parties then sued out separate writs of habeas corpus before a justice of the supreme court of the District of Columbia, who, upon hearing, discharged the said writs and remanded the parties to the custody of the marshal of the District of Columbia.

From these several orders the appellants appealed. The cases involving the same question, they were argued together.

*Mr. Henry E. Davis,* for the appellants, in his brief cited:

*Anderson* v. *United States.* 171 U. S. 604; *Armour Packing Co.* v. *United States,* 209 U. S. 56; *Bain, Exp.* 121 U. S. 1; *Dunbar* v. *United States,* 156 U. S. 185; *Evans* v. *United*

*States,* 153 U. S. 584; *Henry* v. *Henkel,* 235 U. S. 219; *Hopkins* v. *United States,* 171 U. S. 578; *Keck* v. *United States,* 172 U. S. 434; *Markham* v. *United States,* 160 U. S. 319; *Nash* v. *United States,* 229 U. S. 373; *Pierce* v. *Creecy,* 210 U. S. 387; U. S. Rev. Stat. Section 1025; Sherman Act, 26 Stat. at L. 209; *Swift & Co.* v. *United States,* 196 U. S. 375; *Thomas* v. *United States,* 156 Fed. 897; *United States* v. *Carll,* 105 U. S. 611; *United States* v. *Cruikshank,* 92 U. S. 542; *United States* v. *Hess,* 124 U. S. 483.

*Mr. John E. Laskey,* United States District Attorney, *Mr. Mabry C. Van Fleet,* Special Assistant United States Attorney, and *Mr. I. R. Oeland,* and *Mr. John Lord O'Brian,* Special Assistants to the Attorney General, for the appellees in their brief cited:

*Beavers* v. *Henkel,* 194 U. S. 73, 82; *Beavers* v. *Henkel,* 198 U. S. 1, 12; *Burton* v. *United States,* 202 U. S. 344, 372; *Ching* v. *United States,* 118 Fed. 538; *Cochran* v. *United States,* 157 Fed. 290; *Re Debs,* 64 Fed. 745; *Dealy* v. *United States,* 152 U. S. 539, 543; *Drew* v. *Thaw,* 235 U. S. 432, 439; *Greene* v. *Henkel,* 183 U. S. 249; *Hyde* v. *United States,* 27 App. D. C. 377; *Hyde* v. *United States,* 225 U. S. 347; *Henry* v. *Henkel,* 235 U. S. 219, 229; *Lamar* v. *United States,* 240 U. S. 60; *Loewe* v. *Lawlor,* 208 U. S. 274; *N. Y. C. &c. R. R.* v. *United States,* 212 U. S. 481, 497; *People* v. *Matthews,* 4 Wend. 261; *People* v. *Willis,* 34 App. Div. 203; *Pierce* v. *Creecy,* 210 U. S. 387; *Steers* v. *United States,* 192 Fed. 5; *Swift & Co.* v. *United States,* 196 U. S. 375, 395; *Strassheim* v. *Daily,* 221 U. S. 280; *Thomas* v. *United States,* 156 Fed. 907; *United States* v. *Armour & Co.* 209 U. S. 56, 83; *United States* v. *Kissel,* 173 Fed. 825; *United States* v. *Kissel,* 218 U. S. 601; *United States* v. *MacAndrews & F. Co.* 149 Fed. 843; *United States* v. *Patten,* 187 Fed. 667; *United States* v. *Patten,* 226 U. S. 525; *United States* v. *Rintelen,* 233 Fed. 793, 235 Fed. 787; *United States* v. *Stephens,* 44 Fed. 141; *United States* v. *Workingmen's &c. Council,* 57 Fed. 994; *Williamson* v. *United States,* 207 U. S. 426, 427.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The contention of all of the appellants is that the indictment charges no offense whatever, and for that reason the removal of the parties is not justified.

The single question argued has been the insufficiency of the indictment, in that it charges no offense against the laws of the United States.

The sufficiency of the indictment is to be decided in the court in which it was returned. *Beavers* v. *Henkel,* 194 U. S. 73, 87, 48 L. ed. 882, 887, 24 Sup. Ct. Rep. 605; *Benson* v. *Henkel,* 198 U. S. 1, 10, 49 L. ed. 919, 922, 25 Sup. Ct. Rep. 569; *Pierce* v. *Creecy,* 210 U. S. 387, 402, 52 L. ed. 1113, 1120, 28 Sup. Ct. Rep. 714.

It may be added that the sufficiency of this particular indictment was challenged by motion to quash before District Judge Wolverton of the southern district of New York, which was filed by Monnett and Taylor, two of the defendants therein. The judge, after much consideration, denied the motion. *United States* v. *Rinlclen,* 233 Fed. 793.

The judgments are affirmed with costs.　　　　*Affirmed.*

An application for the allowance of an appeal to the Supreme Court of the United States was denied February 9, 1917.