## United States District Court

April, 1900.

## UNITED STATES v. BENJAMIN D. GREENE.

1. CRIMINAL LAW—REMOVAL—SECTION 1014 U. S. R. S.

In states where the accused has no right to examine witnesses in his own behalf 'before a committing magistrate, he cannot do so in proceedings under § 1014; but in other states, as in New York, where this right does exist and is in daily practice, it cannot be lawfully denied him.

2. SAME.

In proceedings under that section, therefore, the commissioner must receive all evidence touching probable cause of guilt that a state committing magistrate would be bound to take, without reference to any subsequent trial upon indictment.

3. SAME.

There is no "issue" as respects the indictment until the defendants are committed, removed and arraigned and plead not guilty. The inquiry before the commissioner is for the very purpose of ascertaining whether there is sufficient ground to commit and remove the accused and oblige him to plead and stand trial; and to enable him, under the state statute, to arrest the proceedings *in limine*, if he can, by proving that there is no probable cause for the accusation. That was the only "issue" before the commissioner on this hearing.

**4. SAME—CONSPIRACY.**

The gist of the offense of conspiracy is in the illegal combination and intent, and the statute of limitations begins to run from the time the conspiracy is formed.

**5. SAME.**

As each new overt act in furtherance of the common purpose becomes in law a new conspiracy, the time of the conspiracy may be laid within the period of the statute of limitations, if the overt act was within that period; the prior combination, if established, and the later overt act being evidence from which a jury may infer the new conspiracy.

**6. SAME.**

Conspiracy is an offense which especially demands that an indictment shall state with as much certainty as the nature of the case will admit, the facts which constitute the crime intended to be charged.

**7. SAME.**

Where in an indictment for conspiracy the object of the conspiracy is not a legal crime, the means intended to be used must be particularly set forth and show that those means are criminal.

**8. SAME—AFFIDAVIT.**

The mere fact that an indictment had been found in another jurisdiction without producing it, is no evidence of probable cause before a committing magistrate ; and a mere affidavit of that fact only will not justify even the issuing of the warrant of arrest. It is only the facts and circumstances stated in the indictment, if any such are properly stated, that are of any value as evidence, and these statements are to be judged and weighed according to what they may be worth.

**9. SAME.**

Where the indictment is the only evidence of guilt that it presented, some facts showing fraud in the overt acts are as necessary to appear in the indictment as they would be necessary to be proved at the trial.

**10. SAME—REMOVAL.**

The accused, even if guilty, though triable in Georgia also, can only be removed to that jurisdiction by proceedings regularly conducted according to law. To order their removal otherwise, would be an illegal act and scarcely distinguishable from virtual abduction under the forms of law.

Henry L. Burnett, Marion Erwin, United States District Attorneys, and Ernest E. Baldwin, Assistant Attorney, for the United States.

Abram J. Rose and L. Lafflin Kellogg, for defendants.

BROWN, J.—The above four defendants, with Michael A. Connally and Oberlin M. Carter, were indicted by the grand jury in the eastern division of the southern district of Georgia on December 8, 1899, for conspiring to defraud the United States upon two contracts—one for improving the harbor at Savannah and the other for work in Cumberland Sound. Upon an affidavit to this effect by one of the assistants of the United States Attorney referring to a certified copy of the indictment, a warrant was issued by the United States commissioner for this district under section 1014 of the United States Revised Statutes, for the apprehension of the four defendants above named. The defendant Greene resides at Stamford, Connecticut; John F. and W. T. Gaynor in Onondaga County, New York, and E. H. Gaynor at Boston, Massachusetts. The defendants, on notice, appeared before the commissioner and demanded an examination, and proceedings thereon were from time to time had before the commissioner, who, upon finding probable cause that the offenses charged had been committed, ordered the commitment of the defendants for trial. An order is now asked for their removal to the eastern district of Georgia for trial.

The stenographer's notes of the proceedings returned by the commissioner consist of about 1100 pages, showing, however, no other evidence of the commission of the offense than a certified copy of the indictment Some evidence was given as to the identity of the defendants as the persons charged, and this was not seriously contested. Aside from this and the arguments of counsel, the whole record consists of little except rulings upon the evidence on behalf of the defendants sought to be introduced and numerous exhibits, all of which, so far as they pertained to the merits or tended to show the innocence of the accused and the want of probable cause, were rejected, mostly upon the ground that the question of guilt or innocence should only be heard and determined upon a trial under the indictment.

Upon this record the defendants object to any order of removal, on the ground, first, that the indictment is bad upon its face; second, that it was not properly proved, since neither was

the original indictment produced nor was the copy, though certified by the deputy clerk, duty authenticated as an exemplified copy; third, that by reason of its vagueness, its lack of specification of facts and circumstances, and its inconsistences and contradictions in different parts, it is insufficient evidence of probable cause of guilt; fourth, that evidence was improperly rejected tending to show that the grand jury was illegally drawn and constituted, and the indictment, therefore, void; and fifth, that the defendants were virtually denied a hearing by the rejection of all evidence tending to show their innocence.

1. As respects procedure, the present case is identical with that of In re Dana (68 Fed. 886), in which this court, upon careful consideration, pointed out the course necessary to be pursued in cases of this character, under section 1014 of the United States Revised Statutes, and under the law of this State thereby virtually adopted. The views there expressed seem to have been approved by Lacombe, J., in Price's case, 83 Fed., 830; 84 Fed., 636, aff'd, 85 Fed., 84, 87, where the course indicated in the Dana case was followed by the examination of several witnesses to show probable cause, as well as the production of an exemplified copy of the indictment. It was also approved in the case of In re Wood, 95 Fed., 288, and, so far as I am aware, it has not been disapproved in any subsequent reported case.

In view of these decisions, which were repeatedly called to the commissioner's attention, I find it difficult to understand the disregard of them in the rejection of the great mass of competent evidence and exhibits offered in the defendants' behalf. In that decision it was pointed out that the proceeding for commitment and removal under section 1014 is an original proceeding, to be conducted, according to the laws of the State, in similar proceedings before committing magistrates; that the object of the proceeding is to enable the commissioner to ascertain for himself whether from the proof of facts and circumstances produced before him, there is probable cause to believe the defendants guilty of the offense charged; that the mode of proceeding in such cases is precisely the same, whether there is

an indictment or no indictment (see, also, Price v. McCarthy, 89 Fed., 84, per Wallace, C. J.) ; and that an indictment when offered by the prosecution is at best but evidence, in no way conclusive, and in truth is but secondary evidence (which to a certain extent is admissible on such examination), and that although the copy of an indictment may be treated as an affidavit, it is, nevertheless, to be judged by the same rules as other affidavits, and given weight only according to the nature and character of its averments, and the facts and circumstances which it sets forth, if any, in a manner sufficient to warrant the conclusion of probable cause to believe the accused guilty.

By a singular inversion, however, the best reason for the admission of the defendants' proposed evidence, namely, its tendency to show innocence of the charge and the lack of probable cause, was in this instance made the reason for excluding it. A certified copy of the indictment having been received by the commissioner against the defendants' objection, it was thereupon contended by the prosecution, and virtually ruled by the commissioner, that the evidence was closed as respects the question of guilt, and that no evidence disproving it could be allowed, since that would be " trying the issue " here instead of in Georgia. Thus, although the right to show want of probable cause, was admitted in form, it was in substance denied, since whatever would disprove the alleged offense, was for that very reason excluded.

Precisely opposite was the ruling of this court in the Dana case, where it was shown, as I have said, that by section 1014 (the sole authority in the Federal courts for commitment or removal in such cases) the proceeding before commissioners must be in conformity with the existing State procedure. Mr. Justice Curtis, in United States v. Rundlett, 2 Curtis, 41, says :

" My opinion is that it was the intention of Congress by these words to assimilate all proceedings for holding accused persons to answer before a court of the United States, to proceedings had for similar purposes by the laws of the State where the proceedings should take place ; * * * the prisoner is not only to be arrested and imprisoned, but bailed agreeably to the usual mode of process in the State."

See, also, U. S. v. Horton's Securities, 2 Dillon, 94. Mr.
Justice Miller and other eminent judges have confirmed this in-
terpretation (see In re Dana, 86 Fed., 893–4 and cases *ante*).

In States, therefore, where the accused has no right to ex-
amine witnesses in his own behalf before a committing magis-
trate, he cannot do so in proceedings under section 1014; but in
other States, as in New York, where this right does exist and
is in daily practice, it cannot be lawfully denied him.

In New York the right of the accused to produce witnesses in
his own behalf before committing magistrates was confirmed by
express statute more than seventy years ago, and more than
forty years before the enactment of section 1014 of the United
States Revised Statutes; and such is the uniform course of pro-
cedure. The New York Revised Statutes (1828) declare (vol.
2, p. 708):

"Section 17. After the examination of the prisoner is com-
pleted, his witnesses, if he have any, *shall be sworn and examined*,
and he may have the assistance of counsel in such examina-
tion."

This practice is ancient (Dallon's Jus. [1742] chap. 165; 1
Chit. Cr. L., 79).

The existence of an indictment in another jurisdiction has
no bearing upon the application of this statute to proceedings
for commitment, or to the course of the examination, when an
examination is demanded pursuant to the statute, nor upon the
commissioner's duty to take whatever competent evidence is
offered by the defendant tending to show the want of probable
cause; and for that purpose and to that extent the proceeding
is of necessity, like the proceedings before the State magistra-
tes, a partial preliminary hearing on the merits.

It is urged that, under section 1014, the similitude of State
proceedings may be preserved by treating a Federal indictment
from another district as a State indictment found in one county
is treated in another county wherein the defendant is arrested
That analogy, however, could only be followed by the indorse-
ment of a bench warrant from the Federal district where the
indictment was had, by the judge of the district where the ac-
cused might be found. But that practice, if ever in use, has

been long since abandoned. Besides the authorities opposed to it cited in the Dana case (68 Fed., 893–4) it was again disapproved by Lacombe, J., in the late case of Price (83 Fed., 830) as oppressive and unauthorized. Section 1014, moreover, plainly contemplates the examination of witnesses, and provides for a return of the "recognizances for their appearance to testify in the case." In proceeding under that section, therefore, the commissioner must receive all evidence touching probable cause of guilt that a State committing magistrate would be bound to take, without reference to any subsequent trial upon indictment.

The objection that this would be "trying the issue" is premature. There is no "issue" as respects the indictment until the defendants are committed, removed and arraigned and plead not guilty. The inquiry before the commissioner is for the very purpose of ascertaining whether there is sufficient ground to commit and remove the accused and oblige him to plead and stand trial; and to enable him, under the State statute, to arrest the proceedings *in limine*, if he can, by proving that there is no probable cause for the accusation. That was the only "issue" before the commissioner on this hearing.

In New York the statute above cited has been followed in the Code of Criminal Procedure by still further provisions designed to safeguard accused persons from arbitrary, mistaken or malicious commitments (secs. 188–214). And in the absence of some act of Congress expressly dispensing with any other evidence than the indictment itself, as in extradition proceedings, it is impossible that in a proceeding under section 1014, which makes applicable the State laws, the rights of citizens expressly guarded by the State laws can be set aside by a mere indictment in a distant jurisdiction; so that without a word in their own defense citizens could be thereupon transported for trial hundreds or even thousands of miles away from their homes, in contravention of the act of Congress and the laws of the States which it recognizes and adopts. Such a proceeding would be not merely erroneous but illegal.

The extradition cases cited on the argument, whether interState or inter-national, are wholly inapplicable. Both these

proceedings are regulated by wholly different statues, or by treaty stipulations.   In inter-State extradition the acts of Congress, as well as the State statutes, exclude altogether any inquiry into the guilt or innocence of the accused the only conditions of the statutory obligation of the executive to return the accused, being, first, that there is an indictment or information against him (of which an exemplified copy is sufficient evidence; N. Y. Crim. Code, sec. 827–9), and second, that the accused is a fugitive from justice (U. S. Rev. St., sec. 5278; In re Leary, 10 Ben., 197).

It is unnecessary to consider the questions arising on the exclusion of the evidence touching the alleged illegality in the drawing of the Georgia grand jury, or to discuss at much length either the sufficiency of the very complicated indictment as a pleading or its force and weight as evidence.   As explained in the Dana case, those two questions are altogether distinct, and while I have some doubt, but do not need to pass, on the question of the sufficiency of the indictment as a pleading, I have no doubt that, viewed as an affidavit, it is insufficient in its statement of facts and circumstances to justify a removal when, as in this case, an examination has been demanded by the accused and its sufficiency challenged.   Witnesses for the prosecution having at least some knowledge of the facts were in attendance before the commissioner, but were not examined as to the offense, nor were they allowed to testify for the defendants on cross-examination, so that the facts and circumstances on which the magistrate should form his judgment have not in fact been made known.   I add some observations on the indictment as a pleading and as evidence.

2. The gist of the offense of conspiracy is in the illegal combination and intent, and the statute of limitations begins to run from the time of conpiracy is formed.   The crime may be complete, though the intent was never accomplished.   And though the statute offense requires an overt act "to be done by one or more of the parties to the conspiracy" or some act "to effect its object," yet this act, as in the common law offense of conspiracy, is not regarded as an essential part of the offense itself, the statutory provision being construed as requiring such an act to be

proved as a condition of conviction, in order to give the defendants a *locus penitentiae* (U. S. v. Britton, 108 U. S., 199). It is held to be sufficient, therefore, if the overt act is "so described as to apprise the defendant what act is intended to be given in evidence as tending to show that *the unlawful agreement was put in operation.*" U. S. v. Donan, 11 Blatch., 168 ; U. S. v. Boyden, 1 Low, 266; U. S. v. Sanche, 7 Fed., 715; U. S. v. Benson, 70 Fed. 591.

In the first and principal count the indictment states in effect two conspiracies to defraud the United States; the first, not directly charged as a conspiracy, but called a "fraudulent scheme," and set forth by way of inducement, is alleged to have been formed on or about January 1, 1891, and to have been thereafter " *in continuous process of execution until October 1, 1897.*" As an original conspiracy this was evidently outlawed before the indictment was found in December, 1899. The second conspiracy, and the one relied on, is an alleged conspiracy formed on January 1, 1897, to defraud the United States " by applying the previous ' fraudulent scheme ' " to the execution of two contracts previously obtained, it is alleged, by means of said fraudulent scheme on October 6, 1896 ; and counts 2, 3, 4 and 5 state certain alleged overt acts done to carry this new conspiracy into effect. These averments of overt acts, however, cannot be resorted to in order to aid any defective averments as to the conspiracy itself, or as the means by which it was to be accomplished, which in this case were necessary to be set forth.

As the original fraudulent scheme or conspiracy is alleged to have been in continuous process of execution from January, 1891, to October, 1897, and therefore included the two contracts of October 8, 1896 (the only subjects in the indictment), it is evident that the averment of a new conspiracy on January 1, 1897, to apply the old conspiracy to the execution of the contracts obtained by means of the former one (at a time excluded by the statute of limitations) and already in course of execution is only a pleader's device to avoid the effect of the statute of limitations as against the original fraudulent scheme. But as each new overt act in furtherance of the common pur

pose becomes in law a new conspiracy, the time of the conspiracy may be laid within the period of the statute of limitations, if the overt act was within that period; the prior combination, if established, and the latter overt act being evidence from which a jury may infer the new conspiracy. People v. Mather, 9 Wend., 229; Com. v. Bartilson, 85 Penn. St., 482, 489.

I have considerable doubt, however, whether the averment of the means by which the conspiracy of January 1, 1897, was to be effected are indicated with such definiteness, clearness and certainty as seems to be required (see 4 Encycl. of Plead., 722). In Commonwealth v. Hunt, 4 Metcalf, 111, in which this subject is fully discussed, Shaw, Ch.J., says (page 125):

"Conspiracy is an offense which especially demands the application of that wise and humane rule of the common law, that an indictment shall state with as much certainty as the nature of the case will admit, the facts which constitute the crime intended to be charged. This is required to enable the defendant to meet the charge and prepare for his defense, and, in case of acquittal or conviction, to show by the record the identity of the charge, so that he may not be indicted a second time for the same offense. * * * This fundamental rule is confirmed by the declaration of rights, which declares that no subject shall be held to answer for any crime or offense until the same is fully and plainly, substantially and formally described to him. * * * If the criminality of the offense, which is intended to be charged, consists in the agreement to compass or promote some purpose, not of itself criminal or unlawful, by the use of fraud, force, falsehood, or other criminal or unlawful means, such intended use of fraud, force, falsehood or other criminal or unlawful means *must be set* out in the indictment."

In the prior case of Lambert v. The People, 9 Cowen, 576, it was also held upon elaborate consideration by Marcy, J., that

"Where in an indictment for conspiracy the object of the conspiracy is not a legal crime, the means intended to be used must be particularly set forth and show that those means are criminal."

This doctrine has been repeatedly enforced in the decisions

of the supreme court. United States v. Cruikshank, 92 U. S., 542, 558; United States v. Britton, 108 U. S., 199; United States v. Carll, 105 U. S., 611; United States v. Hess, 124 do., 483; Pettibone v. United States, 148 U. S., 197; Blitz v. United States, 153 U. S., 308, 315; State v. Parker, 43 N. H., 83.

Now, the only means stated by which the alleged conspiracy of January 1, 1897, was to be carried out, is by " *applying* " the prior " fraudulent scheme to the execution and completion of work under the contracts of October 8, 1896, and in obtaining the money for fraudulent accounts which should be rendered thereunder." But of the fifteen or twenty devices which it is alleged that scheme " contemplated," three-fourths relate to the terms, specifications and letting out of the contracts themselves; so that most of that " scheme" could not possibly be " applied " to a conspiracy formed on January 1, 1897, several months after the contracts were let out. Of the remaining means or devices, what ones are meant to be charged is left wholly undefined. This is all the more vague and uncertain, since even the original fraudulent scheme itself is only alleged to have contemplated that the conspirators "would use *some one* or more or all of said means and devices. and such *additional devices* as might become necessary." This is certainly very vague and uncertain as to the means to be used.

The overt act charged in the second count is irrelevant, since it does not appear to be in any way connected with the conspiracy alleged, nor within any one of the means or devices set forth in the conspiracy count. The overt acts charged in counts 3, 4 and 5 are the presentment of alleged " fraudulent claims " to Captain Carter of the corps of engineers, without any statement how or wherein they were fraudulent. The items of the claims are given, dated July 1, 1897, apparently *verbatim*, for work and material furnished under the contracts of October 8, 1896. It would be naturally inferred that the charge intended was that these bills were in some way false and not according to the contract; that is, that the work done and the materials supplied were less than was claimed, or that they were of inferior quality, or in some way different from the contract, or that the price was incorrect. But there is no such averment as respects

any of the bills referred to in any of the counts; nor is it stated that any one of them is false, while from other passages in the indictment, as well as from the observations of counsel in the stenographer's report of the proceedings, it would seem that the supposed fraudulent character of the bills was not founded upon anything incorrect in them or in the work, but upon the alleged fraudulent device contemplated in the preparation and letting of the contracts themselves, no single one of which devices is, however, definitely alleged to have been really employed. Such averments not only do not reasonably apprise the defendants of the nature of the charges they must meet, but are calculaed to mislead them.    This applies to all the counts except the second.

The conspiracy, charged in the sixth count relates wholly to future contracts to be let thereafter, i. e., after January 1, 1897; while the overt acts stated in counts 7 and 8 relate wholly to the prior contracts of October 8, 1896.    On this additional ground, counts 6, 7 and 8 would seem to be necessarily bad.

Counts 9 and 10 alleged conspiracies on July 1, 1897, as respects the same contracts and bills referred to under the conspiracy of January 1, 1897, in counts 1 to 5.    As the presentment of false or fraudulent bills for payment to a government officer is itself a criminal offense (sec. 5238, Rev. St.) I should regard these counts as good had the nature of the fraud been sufficiently indicated.

3. Without passing definitely upon these objections to the indictment as a pleading, they are much more important when the indictment is offered as evidence of the facts and circumstances upon which a magistrate, after examination demanded, is called upon to find probable cause of guilt.    Mere defects in pleading might be disregarded if a crime was otherwise sufficiently shown to have been committed, since commitment and removal may in proper cases be made without any prior indictment. In re Price, 89 Fed., 94. But when there is no evidence of guilt except such as a copy of the indictment itself, considered as an affidavit, affords, there is nothing to cure its defects, or its failure to give a consistent, clear and satisfactory statement

of the evidential facts on which the conclusion of probable guilt may be based.

The mere fact that an indictment had been found in another jurisdiction without producing it, is no evidence of probable cause before a committing magistrate; and a mere affidavit of that fact only will not justify even the issuing of the warrant of arrest. *Ex parte* Solomon, 1 Abb. N. S., 347; *Ex parte* Leland, 7 do., 64. It is only the facts and circumstances stated in the indictment, if any such are properly stated, that are of any value as evidence, and these statements are to be judged and weighed according to what they may be worth.

The present indictment, even more than that in the Dana case, shows that it was drawn and designed as a pleading only, and not as a statement of the facts from which a judicial finding of probable guilt might reasonably be drawn. (1) Its statement of two separate conspiracies with reference to the same two contracts of October 8, 1896, viz: one on January 1, 1897, and another on July 1, 1897, and both upon the same overt acts, since it appears that all of seven months' bills were pre· sented for allowance together, and at the same time, on July 1, 1897, is most improbable as a fact, though allowable as a plead· ing, both being evidently adopted, as I have said, to avoid the statute of limitations, which would be applicable to a charge of conspiracy based upon either the original scheme or the con· tracts of 1896. (2) The inconsistency in the first count, and its consequent vagueness, are manifest in alleging that on January 1, 1897, there was a conspiracy to apply the prior "fraudulent scheme" as a whole to past contracts, when most of the particulars of that alleged scheme could not possibly be thereafter applied to them; and of the rest there is no definite statement of what devices were to be applied, or that any one was in fact applied. (3) The mere statement of the presentment of "fraudulent claims," without any indication how or wherein they were fraudulent, which is the basis of all the counts except the second, is not a proper or sufficient statement of any facts or circumstances on which a judicial judgment of probable cause of guilt can be based; it would not be sufficient for an arrest even in a petty civil case. (4) There is no allegation anywhere

in the indictment that the work and materials supplied and the bills presented were not strictly according to contract, that the prices claimed or allowed were exorbitant, that improper work was passed, or improper substitutions made, nor any facts stated showing actual fraud, or that the government has been defrauded of a dollar. Even if no fuller statement on these points is essential, as a matter of pleading, it is indispensable as evidence of probable cause of guilt that some such actual fraud in the overt acts should be shown on the hearing, as upon the trial, in order to prove that these acts were in truth in pursuance of the alleged conspiracy, and were not done in an honest fulfillment of the contracts referred to, as the defendants had a right to do within the *locus penitentioe* which the statute allows. In most cases, however, the fraudulent or criminal character of the overt acts is the chief if not the only evidence of the unlawful conspiracy. Com. v. Dartilson, 85 Penn. St., 482 ; 2 Wharton Cr. L., 246.

The indictment being the only evidence of guilt that is presented, some facts showing fraud in the overt acts are as necessary to appear in the indictment as they would be necessary to be proved at the trial. In this indictment there are charges of fraud and of "fraudulent claims ; " but not a fact or circumstances is stated from which a magistrate or judge could rightfully find actual fraud, or probable cause for forming such a judgment. The indictment, in other words, is purely a charge, a pleading, for the purpose of putting the defendants on trial, without any evidential facts from which any fraud or conspiracy can be judicially inferred. (5) The failure of the prosecution to examine the government witnesses present, Captain Gillette among others, in reference to the offense itself, and the persistent objection to any cross-examination of these same witnesses and to the defendants' examination of others having knowledge of the facts, resulting in the exclusion of all testimony as to the probable guilt of the accused, which is the principal object of such examinations, together with the circumstances above stated, show that the withholding of all evidential facts, both in the indictment and before the commissioner, was designed, in consequences of a misapprehension of the proper course of procedure

under section 1014 in connection with the statutes of this State and the ordinary practice thereunder.

I know nothing of the probable guilt or innocence of the accused, except from the record before me. Considerable evidence which was offered and under the law should have been received indicates innocence, so far as it goes. Opposed to this is the Georgia indictment alone, which on examination proves to be a bare pleading, barren of any such statement of facts and circumstances as to warrant any judicial finding of probable fraud. Of the eight overt acts alleged, two of the principal ones, viz.: the issuing of the two checks for the whole work referred to under both contracts of October 8, 1896, were done in New York, where the offense, if any, was, therefore, equally triable. 4 Encycl. Pl. & Pr., 708 ; People v. Mather, 4 Wend., 229. Com. v. Bartilson, *supra.* The accused, even if guilty, though triable in Georgia also, can only be removed to that jurisdiction by proceedings regularly conducted according to law. To order their removal otherwise, would be an illegal act and scarcely distinguishable from virtual abduction under the forms of law.

For the above reasons the application should be denied and the defendants discharged, without prejudice to such other proceedings as may be advised.