## SAFFORD v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit.   May 10, 1918.)

·No. 192.

1. PERJURY ⬤⇒9(2)—AUTHORITY TO ADMINISTER OATH—UNITED STATES COMMISSIONERS—"PROCESS."

Relative to commission of perjury under Criminal Code, § 125 (Comp. St. 1916, § 10295), a United States commissioner, under Rev. St. § 1014 (Comp. St. 1916, § 1674), wherein "process" is used with the meaning of "procedure," has authority to conduct a preliminary hearing (recognized by section 981 [Comp. St. 1916, § 1622], and called for by Comp. St. 1916, § 1678), and therein to administer oaths.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Process.]

2. CRIMINAL LAW ⬤⇒1169(1)—HARMLESS ERROR—EVIDENCE OF IDENTITY—LETTERS—HEARSAY.

Identity of a person, whether O. or W., who under the name of O., with T., registered at a hotel, being in issue, on prosecution for perjury, admission of letters previously written in the name of O. to T., only to show similarity of character, habits, expressions, and chirography of writer with those of W., as proved by witnesses and letters concededly written by him, objected to as hearsay, was immaterial.

3. CRIMINAL LAW ⬤⇒815(1)—ONE-SIDED CHARGE—DISCUSSION OF TESTIMONY.

Charge fully informing jury of presumption of innocence, necessity of proof beyond reasonable doubt, and that they were the absolute judges of the facts, held not one-sided, though its contrasting of the evidence necessarily showed the government's case far the more probable.

4. CRIMINAL LAW ⬤⇒689—REOPENING CASE FOR EVIDENCE—DISCRETION.

Denying defendant's application, made after conclusion of government's summing up, to explain an exhibit or offer further evidence respecting it, was within the judge's discretion.

5. WITNESSES ⬤⇒48(1)—FEDERAL COURTS—COMPETENCY OF WITNESS.

Previous convictions do not make a witness incompetent in a federal court.

6. WITNESSES ⬤⇒245—EXTENT OF EXAMINATION.

The trial court may exclude questions previously answered.

7. WITNESSES ⬤⇒225—EXTENT OF EXAMINATION.

The trial court may prevent unnecessary and prolix examination.

In Error to the District Court of the United States for the Southern District of New York.

Frank D. Safford was convicted of perjury, and brings error. Affirmed.

Slade & Slade, of New York City (B. Slade, of New Haven, Conn., of counsel), for plaintiff in error.

Francis G. Caffey, U. S. Atty., of New York City (H. Harper and Samuel Hershenstein, both of New York City, of counsel), for the United States.

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge.   This is one of a series of litigations arising out of a charge made by Rae Tanzer that she had been seduced under a

promise of marriage by James W. Osborne. March 16, 1915, she began a civil suit against him for breach of promise of marriage for damages in the sum of $50,000. March 19, James W. Osborne caused a warrant to be issued against Rae Tanzer, charging her, under section 215, United States Criminal Code (Act March 4, 1909, c. 321, § 215, 35 Stat. 1130 [Comp. St. 1916, § 10385]), with using the United States mails to execute a scheme to defraud.

Two sisters of Rae Tanzer testified at the hearing before the commissioner that James W. Osborne called at her home October 17, 1914, and the defendant testified that he was clerk of the Kensington Hotel, Plainfield, N. J., and he identified James W. Osborne and Rae Tanzer as registering as Oliver Osborne and Mrs. Oliver Osborne and taking a room for the afternoon, October 18, 1914. The commissioner held Rae Tanzer for the grand jury. Subsequently the sisters and the defendant Safford were indicted for perjury under section 125 of the United States Criminal Code (Comp. St. 1916, § 10295), and Maxwell and David Slade, Rae Tanzer's attorneys, with one McCullough, a detective, were indicted for the crime of conspiracy. The defendant Safford was convicted of perjury, the judgment being reversed in this court (233 Fed. 495, 147 C. C. A. 381), and this is a writ of error to a judgment of conviction upon the new trial, which occupied 15 court days and developed a good deal of heat between counsel; Learned Hand, District Judge, presiding.

It was conceded in all these proceedings that a man calling himself Oliver Osborne had entered into illicit relations with Rae Tanzer, and had brought her to the Hotel Kensington October 18, 1914, but the vital question was whether this man was James W. Osborne, as Rae Tanzer alleged, or was one Charles H. Wax, as James W. Osborne alleged. There was, of course, the additional question whether, if Wax was the man, the defendant had falsely and knowingly identified James W. Osborne before the United States commissioner, or had made an honest mistake. The record consists of 2,719 typewritten pages, and there are 515 assignments of error. It will be readily understood that the court can do no more than dispose of most of them generally.

[1] At the outset and throughout the case the defendant's attorneys objected that the United States commissioner had no authority to conduct a hearing or administer an oath to the defendant, or to do more than issue a warrant of arrest and either imprison or admit him to bail. If this is so, the defendant would not be guilty of perjury under the statute, even if he had knowingly testified falsely, because the crime can only be committed if the officer has authority under the laws of the United States to administer the oath. Section 125, U. S. Criminal Code.

Ever since circuit court commissioners, now called United States commissioners (Act May 28, 1896, c. 252, § 19, 29 Stat. 184), were appointed (Act Aug. 23, 1842, c. 188, 5 Stat. 517; Act March 2, 1867, c. 180, 14 Stat. 543 [Comp. St. 1916, §§ 1636, 1637]), it has been the practice for them to conduct judicial hearings for the purpose of inquiring whether any crime has been committed, and, if so, whether there

is reasonable ground for connecting the prisoner with it, and there-upon either discharging him, imprisoning him, or admitting him to bail. It would be a scandal to arrest and imprison citizens without giving them a hearing, and we would not interfere with this uniform and wholesome practice, except under absolute necessity.

Section 1014, Rev. Stat. U. S. (Comp. St. 1916, § 1674), provides:

"For any crime or offense against the United States, the offender may, by any justice or judge of the United States, or by any commissioner of a Circuit Court to take bail, or by any chancellor, judge of a Supreme or superior court, chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate, of any state where he may be found, and agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. Copies of the process shall be returned as speedily as may be into the clerk's office of such court, together with the recognizances of the witnesses for their appearance to testify in the case. And where any offender or witness is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned, seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had."

The defendant contends that the language "agreeably to the usual mode of process against offenders in such states" means only "the process itself, such as warrants, commitments, etc., as distinguished from procedure, which may embrace hearings." We think it means procedure, and the Code of Criminal Procedure of the state of New York (sections 188–220) provides for just such examinations. United States v. Dunbar, 83 Fed. 151, 27 C. C. A. 488; Cohen v. United States, 214 Fed. 23, 130 C. C. A. 417; United States v. Greene (D. C.) 100 Fed. 941.

Section 981, Rev. Stat. U. S. (Comp. St. 1916, § 1622) incorporating the law enacted August 16, 1856, recognized such hearings by restricting the number of witnesses to four, whose fees shall be taxed against the United States "in the examination of any criminal case before a commissioner of the Circuit Court." Section 1 of the act of August 18, 1894, plainly calls for a preliminary hearing before the commissioner. It is as follows:

"It shall be the duty of the marshal, his deputy, or other officer, who may arrest a person charged with any crime or offense, to take the defendant before the nearest Circuit Court commissioner or the nearest judicial officer having jurisdiction under existing laws for a hearing, commitment, or taking bail for trial, and the officer or magistrate issuing the warrant shall attach thereto a certified copy of the complaint, and upon the arrest of the accused, the return of the warrant, with a copy of the complaint attached, shall confer jurisdiction upon such officer as fully as if the complaint had originally been made before him, and no mileage shall be allowed any officer violating the provisions hereof." U. S. Comp. Stat. § 1678.

[2] The principal fact to be established in the case was one of identity. The District Judge, over the objection of the defendant that it was hearsay, admitted evidence that Wax had assumed the name of Oliver Osborne, had been known to, corresponded with, and asked for under that name by several persons, was in the habit of picking

acquaintance with shop girls, sending notes to them, and inviting them to dinner and to the theater. Further it is said that under our former decision in this case (233 Fed. 497, 147 C. C. A. 381), the letters written to Rae Tanzer either by Wax or by James W. Osborne, and the letters concededly written by Wax under the name of Maize Mason Nye to Ethel Brooks, should have been excluded as hearsay. The conversation with and letter written by Wax, which we held should have been excluded as hearsay on the former trial, were flat statements by Wax that he was the Oliver Osborne who had made love to Rae Tanzer. That was establishing by hearsay the precise point in issue. But the letters to Rae Tanzer were admitted in this case only to show the similarity of character, habits, expressions, and chirography of the writer with those of Wax, as proved by witnesses and by letters concededly written by him. The contents of the letters objected to were mere love trash and quite immaterial. Upon this subject see Hardy v. Harbin, 154 U. S. 598, 14 Sup. Ct. 1172, 22 L. Ed. 378; Wigmore on Evidence, 410–416.

[3] Next, there are a number of exceptions to the charge, the principal complaint being that it was so one-sided as to constitute a summing up for the government, omitting to remind the jury of the defense. We cannot accept this view. The jury were informed fully and clearly as to the presumption of the defendant's innocence, the necessity of proving his guilt beyond a reasonable doubt, and that they were the absolute judges of the facts. When the court came to contrast the government's theory and the defendant's theory with the evidence, what he said seemed very persuasive in favor of the government; but this, we think, was in the nature of things. The defense was that James W. Osborne had employed Wax to impersonate him and assume his guilt, and had suborned him and other witnesses for the government. This was plainly set forth to the jury. No doubt, in hearing the charge, the jury perceived, as we do in reading it, that the government's case was far the more probable. It would be difficult to discuss the testimony at all without this result.

[4] The defendant vigorously insists that it was error, after the government had concluded its summing up, to deny his application either to explain Exhibit 8 or offer further evidence in respect to it. The contention is that this exhibit was only marked for identification, and that the attorney for the United States, without having offered it in evidence or previously mentioning it, made great capital out of it in summing up. The trial judge has certified in the bill of exceptions that the exhibit, although originally marked for identification, was subsequently offered in evidence. It was within his discretion either to grant or to deny the defendant's application at that late stage of the case, and we cannot say that he abused his discretion in denying it.

[5] The objection as to the competency of Wax as a witness because of previous convictions is not good. Rosen v. United States, 245 U. S. 467, 38 Sup. Ct. 148, 62 L. Ed. 406.

[6, 7] Such of defendant's requests as were proper, which the court refused, it covered in the charge. It is within the province of the trial

judge to exclude questions which have been previously answered, and to prevent unnecessary and prolix examination. We discover no harmful error in the other assignments.

The judgment is affirmed.