## UNITED STATES v. MORSE.

(District Court, D. Connecticut. February 25, 1923.)

1. **Criminal law ☞242(7)—Procedure for removal of accused to another federal district; "agreeably to the usual mode of process."**

In a proceeding under Rev. St. § 1014 (Comp. St. § 1674), for removal of an accused to another federal district for trial on a criminal charge, which is to be conducted "agreeably to the usual mode of process against offenders in such state," the measure of proof required to warrant an order of removal is determined by the local rules governing examinations before a state magistrate to establish a prima facie case.

[Ed. Note.—For other definitions, see Words and Phrases, Agreeably to the Usual Mode of Process.]

2. **Criminal law ☞242(5)—Indictment is prima facie evidence of probable cause in proceedings for removal of accused to another district.**

Proceedings for removal of an accused to another federal district for trial are judicial, and not ministerial, and while an indictment is prima facie evidence of probable cause, it is not conclusive, and defendant may offer evidence in rebuttal, or may attack the sufficiency of the indictment.

3. **Indictment and information ☞124(6)—Indictment against different defendants held bad for misjoinder.**

In an indictment for conspiracy to use the mails to defraud charges against two groups of defendants, one charged with conspiracy to devise a scheme to defraud to be executed by the use of the mails, and the other with conspiracy to commit other acts, cannot be joined on an allegation that such acts were intended to aid and abet the first group in carrying out the object of their conspiracy.

4. **Conspiracy ☞43(4)—Intention to commit offense must be averred.**

In an indictment for conspiracy to use the mails to defraud, the intention to commit the offense prohibited by Pen. Code, § 215 (Comp. St. § 10385), must be averred.

5. **Criminal law ☞242(4)—Sufficiency of indictment in proceedings for removal of defendants stated.**

In consideration of an application for removal of an accused to another district for trial on a charge of conspiracy to use the mails to defraud, the indictment, treated as an affidavit, must show that the overt acts alleged were committed in furtherance of the principal offense charged, to which a scheme to defraud is essential.

6. **Conspiracy ☞43(5)—Allegation of overt act in indictment for conspiracy to use mails to defraud stated.**

In an indictment for conspiracy to use the mails to defraud, allegations, as overt acts, of the mailing of letters, should allege that

they were "to be sent or delivered by the post office establishment of the United States," following Penal Code, § 215 (Comp. St. § 10385).

7. **Indictment and information ⚌62—Must charge offense in direct terms.**

An indictment should charge a criminal offense in unmistakable terms, free from doubt, and not resting on inference.

8. **Criminal law ⚌242(7)—Evidence held insufficient to warrant removal of defendant for trial.**

The prima facie case of probable cause made by an indictment on an application for an order for removal of a defendant to another district for trial *held* overcome by evidence offered by defendant.

9. **Criminal law ⚌242(7)—"Probable cause," warranting removal of an accused to another district for trial, means more than mere inference or suspicion.**

"Probable cause," warranting removal of an accused from the district of his domicile to another district for trial on a criminal charge, means more than a mere inference or suspicion, and if the indictment obviously asserts as facts matters which did not exist or could not have existed, and such appears from evidence, it is ineffective as proof of the existence of probable cause.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Probable Cause.]

Proceeding by the United States against Harry F. Morse for order removing defendant to the Southern district of New York for trial, and petition by said Morse for writ of habeas corpus. Order of removal denied, and writ granted.

Edward L. Smith, of Hartford, Conn., for the United States.

Nash Rockwood, of New York City, and Carl Foster, of Bridgeport, Conn., for defendant.

THOMAS, District Judge. This matter is before the court on a writ of habeas corpus, resisting the removal of the defendant from the district of Connecticut to the Southern district of New York. The defendant was apprehended in the state of Connecticut, where he resides, and taken before a United States commissioner, upon a complaint verified by the United States attorney for this district, charging him with a violation of section 37 of the Penal Code (Comp. St. § 10201). Attached to the complaint, or information, which was upon information and belief only, was a certified copy of an indictment returned against the defendant and 23 others by a grand jury in the Southern district of New York in April, 1922, accusing them of conspiring to use the mails to defraud.

Removal of the defendant from Connecticut to the Southern district of New York for trial was sought in the proceedings before the commissioner. At the preliminary hearing, after motions to dismiss had been made and denied, the government offered in evidence a certified copy of the indictment, together with testimony identifying the defendant, and thereupon rested its case without further proof. The defendant then moved for dismissal, alleging that the indictment was fundamentally defective, and that the local Connecticut practice had not been followed, as required by section 1412 of the Federal Code (R. S. § 1014 [Comp. St. § 1674]). This motion was denied, and the defend-

⚌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ant presented oral and documentary evidence to the commissioner to rebut the presumption of probable cause, which testimony was taken at great length. At its conclusion the commissioner denied further motions to dismiss and reserved decision, subsequently finding that there was probable cause to believe the defendant guilty of the crime charged, and committing him for removal to the custody of the marshal. Applications for writs of habeas corpus and certiorari were made and granted in behalf of the defendant, who was admitted to bail pending decision.

The marshal has made return to the writ of habeas corpus, alleging that he is holding the defendant pursuant to the order of commitment of the commissioner, and the commissioner has made return to this court of all of his proceedings including the evidence taken before him. The defendant has demurred to the returns of the marshal and commissioner, averring an entire lack of jurisdiction in the proceedings and an absence of probable cause.

Prior to the argument upon the return of the writs of habeas corpus and certiorari, the United States attorney made an oral request for an order for the removal of the defendant to the Southern District of New York, and by consent of counsel, with the approval of the court, all motions were argued and will be considered and decided together.

[1] The practice upon applications of this character is governed by section 1412 of the Federal Code (R. S. § 1014), which reads, so far as is here applicable:

"For any crime or offense against the United States, the offender may, by any justice or judge of the United States, or by any commissioner of a Circuit Court to take bail, or by any chancellor, judge of a Supreme or superior court, chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate, of any state where he may be found, and agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. * * * And where any offender or witness is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned, seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had."

At the very outset it is urged for the defendant that the proceedings before the commissioner were not conducted "agreeably to the usual mode of process against offenders," in criminal cases in the state of Connecticut, in that (a) the accused was not confronted with the witnesses against him; (b) that the counsel for the government was himself a witness for the complainant in testifying to the identification of the defendant; and (c) that counsel in his summation to the commissioner improperly commented upon the fact that the defendant had not taken the stand as a witness in his own behalf. In support of these contentions reference is made to State v. Ferrone, 96 Conn. 160, 113 Atl. 452; State v. Ferrone, 97 Conn. 258, 116 Atl. 336; Nanos et al. v. Harrison, 97 Conn. 529, 117 Atl. 803; section 6634, General Statutes of Conn.

That the local state practice is to be followed in removal proceedings before a United States commissioner under R. S. § 1014, quoted supra, is established by numerous decisions. In U. S. v. Ruroede (D. C.) 220 Fed. 210, the court sustained a writ of habeas corpus and discharged the defendant, because the preliminary removal proceedings before the commissioner did not conform to the practice established in New York by the Code of Criminal Procedure for proceedings before a magistrate, and cited in support of the conclusion reached U. S. v. Greene (D. C.) 100 Fed. 941, where the court, by Judge Addison Brown, following the opinion of Mr. Justice Curtis of the Supreme Court of the United States in U. S. v. Rundlett, 2 Curt. 41, Fed. Cas. No. 16,208, held that it was the effect of section 1014 to assimilate all proceedings for holding accused prisoners to answer before a court of the United States to proceedings had for similar purposes by laws of the state where the proceedings might take place. In Hastings v. Murchie, 219 Fed. 83, 134 C. C. A. 1, a similar rule was invoked in Massachusetts, and a recent decision in point is U. S. v. Maresca (D. C.) 266 Fed. 713, at page 721.

In Safford v. U. S., 252 Fed. 471, 164 C. C. A. 655, Judge Ward, speaking for the Circuit Court of Appeals for this circuit, said (252 Fed. 473, 164 C. C. A. 657):

"The defendant contends that the language 'agreeably to the usual mode of process against offenders in such states' means only 'the process itself. such as warrants, commitments, etc., as distinguished from procedure, which may embrace hearings.' We think it means procedure, and the Code of Criminal Procedure of the state of New York (sections 188-220) provides for just such examinations. United States v. Dunbar, 83 Fed. 151, 27 C. C. A. 488; Cohen v. United States, 214 Fed. 23, 130 C. C. A. 417; United States v. Greene (D. C.) 100 Fed. 941."

We have in Connecticut no Code of Criminal Procedure, but follow the common law. The defendant offered in evidence and proved by a former judge of the city court of Bridgeport, who had acted as such for 12 years, and a former city attorney in the same court, who had been such for about 15 years, that the procedure in Connecticut called for more than the information and identification on a plea of not guilty before the state established a prima facie case. It was conclusively shown that the state must produce witnesses to make out its prima facie case, and that the court would review all of the evidence offered, whether it was offered by the state or the defendant, to determine whether there was sufficient evidence to justify the finding of the existence of probable cause to hold the accused for the superior court. It further appeared that, if the state offers in evidence the information, and proves the identity of the accused, and then rests, offering no oral testimony, the defendant is entitled to a discharge.

While attaching substantial importance to these contentions, they are, nevertheless, overshadowed by the more vital contentions of the non-existence of jurisdiction and probable cause, upon the affirmative determination of which must ultimately rest the government's right of removal.

[2] The indictment was prima facie evidence of the existence of probable cause, but that it was not conclusive is decided in Hastings

v. Murchie, 219 Fed. 83, at page 88, 134 C. C. A. 1; Beavers v. Henkel, 194 U. S. 73, 24 Sup. Ct. 605, 48 L. Ed. 882; U. S. v. Yount (D. C.) 267 Fed. 861; Tinsley v. Treat, 205 U. S. 20, 27 Sup. Ct. 430, 51 L. Ed. 689; Gayon v. McCarthy, 252 U. S. 171, 173, 40 Sup. Ct. 244, 64 L. Ed. 513. In Beavers v. Henkel, Mr. Justice Brewer said (194 U. S. on page 85, 24 Sup. Ct. 607, 48 L. Ed. 882):

"It is sufficient for this case to decide, as we do, that the indictment is prima facie evidence of the existence of probable cause. This is not in conflict with the views expressed by this court in Greene v. Henkel, 183 U. S. 249."

In the Yount Case, supra, Judge Thomson said (267 Fed. at page 862):

"The Supreme Court has mapped out with clearness the procedure under section 1014 of the Revised Statutes (Comp. St. § 1674), where it is sought to remove a defendant from the district where arrested to that where the offense is triable. It is distinctly ruled that, while the indictment constitutes prima facie evidence of probable cause, it is not conclusive, and evidence may be offered by the defendant tending to show that no offense triable in the district to which removal is sought has been committed; that in such a proceeding the function of the judge is not ministerial, but judicial."

If the indictment does not charge the commission of a penal offense under the laws of the United States, then all jurisdiction to commit the defendant for removal is at an end. Tinsley v. Treat, supra, was evidently intended by the Supreme Court to prescribe a general rule of procedure governing matters of this character. There the matter came before the Supreme Court, because the commissioner and court would not allow the defendant to offer evidence to rebut the presumption of the existence of probable cause. On page 28 of 205 U. S., on page 432 of 27 Sup. Ct. (51 L. Ed. 689), Chief Justice Fuller, writing the opinion, said:

"At the hearing before the Circuit Court, in addition to the record of the proceedings before the District Judge, an offer was made to prove by witnesses the facts set forth in the petition, but the court did not admit the same, because it was held that the certified copy of the indictment, with proof of the identity of the party accused, sufficiently established the existence of probable cause. In other words, the indictment was in effect held to be conclusive. The Circuit Judge said, it is true, that probable cause must be shown in order to obtain a removal, but he held that inasmuch as the copy of the indictment alone was regarded as sufficient evidence of probable cause in Beavers v. Henkel, 194 U. S. 73, it was sufficient in the present case. In that case, however, no evidence was introduced to cover the prima facie case made by the indictment except that evidence was offered as to what passed in the grand jury room and rejected on that ground and not because it went to the merits."

Then, in commenting on section 1014, the learned Chief Justice spoke as follows (205 U. S. at page 29, 27 Sup. Ct. 432, 51 L. Ed. 689):

"Obviously the first part of this section provides for the arrest of any offender against the United States wherever found and without reference to whether he has been indicted, but when he has been indicted in a district in another state than the district of arrest, then, after the offender has been committed, it becomes the duty of the District Judge, on inquiry, to issue a warrant of removal. And it has been repeatedly held that in such cases the judge exercises something more than a mere ministerial

function, involving no judicial discretion. He must look into the indictment to ascertain whether an offense against the United States is charged, find whether there was probable cause, and determine whether the court to which the accused is sought to be removed has jurisdiction of the same. 'The liberty of the citizen, and his general right to be tried in a tribunal or forum of his domicile, imposes upon the judge the duty of considering and passing upon those questions.' Mr. Justice Jackson, then Circuit Judge, Greene's Case, 52 Fed. Rep. 104. In the language of Mr. Justice Brewer, delivering the opinion in Beavers v. Henkel, 194 U. S. 73, 83: It may be conceded that no such removal should be summarily and arbitrarily made. There are risks and burdens attending it which ought not to be needlessly cast upon any individual. These may not be serious in a removal from New York to Brooklyn, but might be if the removal was from San Francisco to New York. And statutory provisions must be interpreted in the light of all that may be done under them. We must never forget that in all controversies, civil · or criminal, between the Government and an individual the latter is entitled to reasonable protection. Such seems to have been the purpose of Congress in enacting section 1014, Rev. Stat., which requires that the order of removal be issued by the judge of the district in which the defendant is arrested. In other words, the removal is made a judicial, rather than a mere ministerial, act."

And again (205 U. S. on page 31, 27 Sup. Ct. 432, 51 L. Ed. 689), the court, in a general review of the cases, took occasion to say:

"It was held in Beavers v. Henkel, 194 U. S. 73, Benson v. Henkel, 198 U. S. 1, and Hyde v. Shine, 199 U. S. 62, as well as Greene v. Henkel, supra, that an indictment constituted prima facie evidence of probable cause, but not that it was conclusive. We regard that question as specifically presented in the present case, and we hold that the indictment cannot be treated as conclusive under section 1014."

In general it may be said that the policy of the law is to protect the individual against any invasion of his rights, one of the most important of which is to be immune from criminal prosecution if not legally accused. In a long line of federal decisions the indictment in removal proceedings, while admittedly prima facie evidence of the existence of probable cause, is given only the effect and strength of an affidavit or information. As illustrative of the current of judicial authority upon this proposition may be cited In re Dana (D. C.) 68 Fed. 886; U. S. v. Greene (D. C.) 100 Fed. 941; U. S. v. Campbell (D. C.) 179 Fed. 762.

[3] Upon the demurrer of some of the defendants in the instant case, the indictment was upheld in the Southern district of New York as being "in usual form," but upon a careful consideration and analysis of it I cannot reach the same conclusion, and cannot believe that the objections which have been argued in behalf of the defendant in this jurisdiction were called to the attention of the court in the Southern district of New York. The indictment divides the 24 indicted defendants into two classes designated as 16 "principal defendants" and 8 "other defendants." Clause B states that the alleged scheme to defraud was to be devised by the 16 "principal defendants" alone, and the "other defendants," according to clause A were to aid, abet, and counsel the "principal defendants" in "accomplishing the object" of the conspiracy. The indictment, therefore, clearly specifies two classes of defendants engaged in different acts, but with a common purpose, and is thus brought within the condemnation of Wilson v. U. S., 190 Fed.

428, 11 C. C. A. 231, where Judge Noyes, speaking for the Circuit Court of Appeals, said (190 Fed. at page 436, 111 C. C. A. at page 240):

"We do not question the correctness of the proposition stated in behalf of said defendant that when certain persons combine to perform certain acts and some of them combine with others engaged in totally different acts, though all may have a similar general purpose in view, it is error to join them in an indictment."

Furthermore, clause D, in terms, limits the making of the fraudulent representations and the dissipation and conversion of assets to the principal defendants.

Again, while there is an allegation that the United States Steamship Company controlled the business and affairs of the several corporations referred to in the indictment as the "underlying corporations," there is an entire absence of averment that the "principal defendants" controlled either the stock ownership or the board of directors of the United States Steamship Company, or that it would have been possible for them to have wasted, dissipated, or converted the assets of the United States Steamship Company. There is a general allegation that the "principal defendants" were "actively engaged, as officers, directors, attorneys, agents, and employees, in the conduct and management of the business and affairs of the United States Steamship Company," but no allegation that they directly or indirectly controlled the corporate acts of the United States Steamship Company.

[4] As the indictment is for conspiracy to use the United States mails to defraud, the intention to commit the offense prohibited by section 215 of the Penal Code (Comp. St. § 10385) must be averred, and under the decision of the Supreme Court in U. S. v. Young, 232 U. S. 155, 34 Sup. Ct. 303, 58 L. Ed. 548, there is grave doubt if such intention is sufficiently alleged.

[5, 6] In the consideration of this application for removal, where the indictment is to be treated as an affidavit, the overt acts must show that they were committed in furtherance of the principal offense charged (Anderson v. U. S., 260 Fed. 557, 171 C. C. A. 341; U. S. v. Dowling [D. C.] 278 Fed. 630), and it should be averred therein that the letters or matter deposited in the mails were "to be sent or delivered by the post office establishment of the United States." Tested by these rules, it seems to me that all of the overt acts relating to mailing are clearly defective, as none of these overt acts contain any allegation that the matter mailed or deposited in the post office was "to be sent or delivered by the post office establishment of the United States." As to overt acts numbered 2, 3, 4, 5, 8, 9, 10, 11, 12, 21, 22, 23, 24, 25, and 26, it is not even alleged that the matter mailed was stamped, so that the machinery of the United States Post Office Department would be legally set in motion. As to overt acts numbered 7, 19 and 20, which contain averments that United States postage stamps were affixed to the matter mailed, there is no allegation that said postage was legally sufficient in amount, which, although a somewhat technical omission, is nevertheless indicative of the lack of care and precision in the draw-

ing of the indictment, particularly in the allegations respecting the overt acts.

And, further, the defendants are not directly charged with having conspired to violate section 215 of the Penal Code, but the charge is that they conspired—"to commit divers, to wit, 1,000 offenses against the United States, of the kind, under the circumstances, in the manner and by the means and methods following, that is to say." Then follow the general allegations as to the connection of the "principal defendants" with the United States Steamship Company and the underlying corporations; that the "other defendants" aided, abetted, and counseled the "principal defendants"; that the "principal defendants" were to devise a scheme to defraud; that all of the defendants were to engage in the mailing of 1,000 letters and papers for the purpose of executing a fraudulent scheme; and that the "principal defendants" were to make certain fraudulent representations, in order to induce the public to buy the shares of the United States Steamship Company. Other alleged fraudulent acts of the "principal defendants" are also averred. The conspiracy to mail 1,000 letters of a fraudulent character would not constitute a criminal act under section 215, without the previous formation of a scheme or artifice to defraud. Had the indictment charged directly the formation of a conspiracy to commit an offense against the United States by violating section 215 of the Penal Code, a different case would be presented.

[7] In the respect last mentioned the indictment is ambiguous and involved, and, if not a fatal defect, does not clearly apprise the defendants of the offense which they are called upon to meet. An indictment should charge a criminal offense in unmistakable terms, free from doubt, and not resting upon inference. The general rules pertinent here are well summarized by Judge Clayton in U. S. v. Dowling, supra. At page 633 he said:

"The settled rules governing here are that a crime should not be charged by way of inference, but directly; the indictment should set forth accurately every ingredient of which the offense is composed; if the crime is made up of acts and intent, these must be set forth with reasonable particularity as to the time and place; the accused should be informed by the indictment as to the precise nature of the charge against him, to enable the court to say as to whether the facts set forth are sufficient in law to support a conviction; and the test is whether the indictment contains every element of the offense and sufficiently informs the defendant of what he must meet, and also whether it will enable him to sustain a plea of former acquittal or conviction"—citing cases.

For all of the reasons stated, the conclusion seems imperative that the indictment does not charge the defendant with a violation of the criminal law of the United States.

[8] But, wholly aside from the legal insufficiencies of the indictment, I find that its evidentiary force, as prima facie proof of the existence of probable cause herein, was overcome by the evidence offered in behalf of the defendant. It must be remembered that the government's whole case consisted of the introduction of the indictment and proof as to the identity of this defendant. There the government rested. This established a prima facie case, in the absence of other evidence.

Thereupon the defendant offered in evidence the testimony of witnesses to rebut the existence of the prima facie case, and that testimony covers some 300 pages of evidence. At the conclusion of that testimony the government offered no evidence to refute the testimony offered in behalf of the defendant or to disprove any part of it.

The indictment rests principally upon allegations to the general effect that the conspiracy contemplated a defrauding of the public by inducing the purchase of stock in the United States Steamship Company through the fraudulent representations that the underlying corporations were—

"respectively going concerns, owning very valuable ships and shipbuilding properties, and having valuable contracts for the construction, repair and operation of ships and the carrying of freight, that those contracts would bring great sums of money in earnings and dividends to owners and holders of the capital stocks of said underlying companies, including said United States Steamship Company, and that the value of said shares of said underlying corporations would thereby be greatly enhanced, which said pretenses, so to be made by said principal defendants to said persons to be defrauded would be false and fraudulent," etc.

The testimony offered in behalf of the defendant before the commissioner shows that all of these allegations, if made, were true and well founded, and that the averments of the indictment relative to fraudulent representations are based upon an assumption of facts wholly contrary to the fact, at least, so far as the evidence adduced shows. The United States Steamship Company and all of its subsidiary companies were by the evidence shown to have not only been going concerns, but all of the underlying corporations were the owners and operators of valuable properties. At Groton, in this district, was located the extensive plant of the Groton Iron Works, representing an investment of some millions of dollars and employing a large force of laborers, mechanics, and shipbuilders, actually engaged in the construction of ships for the government. A court will take judicial notice of the files in civil cases pending in its own court. There is in fact pending in this district an action at law, brought by the trustee in bankruptcy of the Groton Iron Works, to recover from the United States Shipping Board Emergency Fleet Corporation a sum alleged to be due the plaintiff of some millions of dollars, and an extended argument on the pleadings of that case, already had, shows that there were, in fact, certain contracts of magnitude executed between the Groton Iron Works and the Fleet Corporation. And the evidence before the commissioner also showed that at Alexandria, Va., there was the costly shipbuilding plant of the Virginia Shipbuilding Company, also engaged in government work and with thousands of operators and employees. The evidence also shows that the Hudson Navigation Company was the owner and operator of valuable ships upon the Hudson river, with terminals at New York and Albany and a large capital investment. The United States Transport Company had not been incorporated at the time of the formation of the alleged conspiracy, although it is otherwise alleged in the indictment. The evidence further shows that the Groton and Virginia companies had existing contracts with the government for the construction of freight

ships exceeding the sum of thirty million dollars. The United States Transport Company had large freight contracts with shippers both in this and foreign jurisdictions.

So that in any view of the evidence adduced it could not be successfully urged before a trial jury that the United States Steamship Company, the Groton Iron Works, the Virginia Shipbuilding Corporation, the United States Transport Company, and the Hudson Navigation Company were not going concerns, that they did not own valuable properties, that their contracts with the government for the construction of ships were not of considerable prospective value, that their freight-carrying contracts were not of present and future value, and that there did not exist valid business reasons upon which to base the belief and statement that the earnings of these companies from existing contracts and prospective profits would justify the declaration of dividends. Furthermore, the evidence refutes the allegations in the indictment to the effect that the "principal defendants" had been guilty of fraudulent misconduct in conducting the affairs of the business of the United States Steamship Company or of the underlying corporations. The salaries paid to the defendants seem to have been reasonable and within the power of the corporation to authorize. The evidence negatives the suggestion that the assets of the various corporations were wasted or dissipated by the defendants, and the letter sent out to stockholders by the defendant Rupert M. Much, who was president of the United States Steamship Company, instead of containing misstatements of fact to delude and defraud prospective purchasers of stock, seems to have been a frank and candid statement of the financial and physical condition of the company.

The defendants seem to have been justified in their belief that the government contracts would yield substantial profits. The companies were all prosperous going concerns, and there was nothing to indicate that future difficulties would be encountered in the matter of the government contracts, or that there would be any litigation concerning them resulting in the financial embarrassment of the corporation and the consequent depreciation in the values of their respective properties and capital stock. If the allegations in the indictment concerning fraudulent representations do not rest upon any facts, they become and are mere naked conclusions, and cannot be made the basis of a criminal prosecution.

[9] Probable cause, in a removal proceeding, must mean more than mere inference or suspicion. It must contemplate well-founded judicial belief in the guilt of the accused, or that there is at least some valid reason upon which to base a belief in criminality. The removal of one accused of crime from the jurisdiction of his domicile to another jurisdiction for trial calls for a discriminating degree of judicial discretion. As has been noted, the order of removal is not a ministerial act. It is a judicial act. If the indictment obviously asserts as facts matters which did not or could not have existed, and such appears from evidence, or if it rests upon the mere conclusion of the pleader, it is ineffective as proof of the existence of probable cause.

The burden of proof was upon the defendant to overcome the prima

facie case established for the government by the indictment and proof of identity, and when this has been done by the affirmative proof, as here, the burden then shifted, and was upon the government, which elected, however, to stand upon the indictment and the·identity without the presentation of any evidence whatever in rebuttal. The case, then, comes before me with the government's contentions, upon the facts, successfully controverted, sufficiently so to negative the existence of probable cause.

As the government's application for removal and the defendant's motion for discharge by habeas corpus were, by consent, consolidated and have been heard together, I have reached the conclusion that on this record there is no probable cause to believe the defendant guilty of the crime attempted to be charged in the indictment.

For all the reasons herein stated, the application for a warrant of removal to the Southern district of New York is denied, and the defendant's application for discharge upon habeas corpus is granted, and his bond released. The writ must be sustained, and the defendant discharged; and it is so ordered.